JOHN GREANEY *vs.* HOLYOKE WATER POWER COMPANY.
MARGARET GREANEY *vs.* SAME.

Hampden.    September 27, 1899. — October 20, 1899.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ.

*Personal Injuries — Escape of Gas from Pipe in Street into House —*
*Negligence — Instructions — Evidence.*

In an action for personal injuries occasioned to the plaintiff by inhaling gas which escaped from the defendant's pipe, there was evidence that the plaintiff went to bed at about eleven o'clock in the evening, and was found unconscious by people who broke into his house at about half-past six o'clock on the next evening; that when he went to bed he noticed nothing unusual, and when he was taken out there was a strong odor of gas in the cellar and in the house; that he used no gas in the house, which was lighted with kerosene; that the street opposite the house was then dug up, and the defendant's gas pipe running through it was found to be broken; and that there was a strong smell of gas in the street opposite the house before the plaintiff was discovered. The evidence in regard to the condition of the pipe was conflicting; and the defendant introduced evidence tending to show that, over two years before the accident, a sewer was constructed through this street at a depth considerably below the gas pipe, that the earth which was put back was not properly tamped, and that the break in the pipe was caused by the settling of the earth. *Held,* that

there was evidence for the jury on the question whether the defendant was negligent in allowing gas to escape into the plaintiff's house for so long a time.

At the trial of an action for personal injuries caused by inhaling gas which escaped into the plaintiff's ·house from a broken pipe of the defendant in the street, the judge refused to instruct the jury that "the breaking of the pipe is not, under the circumstances of this case, in itself evidence that the defendant was negligent," but instructed them that "if the plaintiff was suffocated with gas, and if the gas came from the broken pipe, that of itself would not justify you in finding that the defendant was negligent"; and then submitted to them the question upon all the evidence whether there was negligence in having a broken pipe in that place. *Held*, that the defendant had no ground of exception.

At the trial of an action for personal injuries caused by inhaling gas which escaped into the plaintiff's house from a broken pipe of the defendant in the street, the judge refused to instruct the jury that "no burden rests on the defendant to show or explain the cause of the accident"; and instructed them as follows: "If what happened is of such a kind and nature that the power of explanation is in the hands of the party against whom the case is brought, you have a right to say they ought to come forward and explain it, otherwise not. · That is, the burden of proof is upon the plaintiff to show that the fault lies on the part of the defendant, and unless that evidence is brought forward of such a kind and nature that the explanation of how it happened lies wholly within the knowledge of the defendant, then the defendant would not be called upon to explain." *Held*, that the instruction was correct and sufficient.

In an action for personal injuries caused by inhaling gas which escaped into the plaintiff's house from a broken pipe of the defendant in the street, the judge admitted the following evidence: 1. A question to a police officer, who found the plaintiff unconscious, "Whether or not you know whether any repairs were made on any pipe except the main pipe?" 2. The evidence of a witness, who testified that, on the day before the accident, he noticed a strong odor of gas on the premises before the broken pipe was removed, but who, on cross-examination, could not state whether there had been any digging in the street, or not. 3. A question to the defendant's superintendent, who had testified that he first went into the house on the evening when the plaintiff was discovered there, and found no gas escaping, "Did you find some afterwards, after that evening?" *Held*, that no error appeared.

TWO ACTIONS OF TORT, for personal injuries sustained by the plaintiffs respectively through the alleged negligence of the defendant in permitting gas to escape from its pipes into the house occupied by the plaintiffs in Holyoke. At the trial of the cases together in the Superior Court, before *Maynard*, J., the jury returned a verdict for the plaintiff in each case; and the defendant alleged exceptions. The facts appear sufficiently in the opinion.

*W. H. Brooks & W. Hamilton,* for the defendant.

*J. B. Carroll & W. H. McClintock,* for the plaintiffs.

KNOWLTON, J. The defendant excepted to the refusal of the presiding justice to give instructions to the jury as follows:

" 1. Upon the whole evidence and the pleadings in the case, the plaintiff cannot recover.   2. There is no sufficient evidence that the negligence of the defendant caused the plaintiff's injuries, and the plaintiff cannot recover.   3. The breaking of the pipe is not, under the circumstances of this case, in itself evidence that the defendant was negligent.   4. No burden rests on the defendant to show or explain the cause of the accident.   6. If the city in building the sewer did not properly tamp or puddle the dirt when it was replaced, and the defendant was ignorant thereof, and there were no indications before the injury upon the surface of the earth of such improper tamping or puddling, and if such improper tamping or puddling caused the pipe to break and the gas to escape therefrom, causing during the night or morning of said break and escape, the plaintiff's injuries, then the plaintiff cannot recover.   7. Before the plaintiff's injury there was no notice to the defendant of any break or leak in the pipe, or danger of such break or leak, and the plaintiff cannot recover."

The evidence tended strongly to show that each of the plaintiffs was rendered unconscious and made seriously ill by the inhalation of illuminating gas, which escaped from the gas main of the defendant into the cellar of the tenement where they lived.   They went to bed at about eleven o'clock in the evening of January 18, 1898, and were found unconscious by a policeman and others, who broke into their house at about half-past six o'clock in the evening of January 19.   When they went to bed they noticed nothing unusual, and when they were taken out there was a strong smell of gas in the cellar and in the house.   They used no gas in the house, but lighted it with kerosene.   There was evidence from which the jury might well find that they were in the exercise of due care.   The street opposite the house was then dug up, and the defendant's gas pipe running through it was found to be broken.   The evidence in regard to the condition of the pipe was conflicting, some witnesses testifying that the break was zigzag, extending nearly a foot along and around the pipe, and that the pipe was very rusty, and others saying that the break looked as if it was fresh and new.   There was also evidence introduced by the defendant tending to show that in August or September, 1895, a sewer

was constructed through this street at a depth considerably below the gas pipe, and that the earth which was put back was not properly tamped, and that the break in the pipe was caused by the settling of the earth. There was evidence that there was a strong smell of gas in the street opposite the house in the afternoon before the plaintiffs were discovered.

The first, second, and seventh requests for rulings are sufficiently covered by the principles laid down by this court in previous cases. *Holly* v. *Boston Gas Light Co.* 8 Gray, 123. *Smith* v. *Boston Gas Light Co.* 129 Mass. 318. *Finnegan* v. *Fall River Gas Works Co.* 159 Mass. 311. *Carmody* v. *Boston Gas Light Co.* 162 Mass. 539. The danger of explosion when gas escapes into a cellar or building, and the probability of death or serious bodily injury from the inhalation of it, are so great, that gas companies are rightly held to the exercise of a high degree of care to keep their gas confined. Their care should be proportioned to the danger. On the other hand, they are not insurers against possible accidents. In the present case we think there was evidence to submit to the jury in favor of the plaintiffs on the question whether there was negligence on the part of the defendant in allowing the gas to escape into the plaintiffs' cellar for so long a time. The defendant introduced evidence that it had a system of inspection of its pipes in the streets. Its superintendent testified that, if the earth settled, "anybody whose business it was to go over those streets and look at the condition of things as related to our system of gas pipes would be able to tell that the earth was settling where the gas pipe was located." There was some evidence tending to show that the company did not know that a sewer had been constructed through this street. The jury might have found that due care on the part of the defendant would have discovered the existence of a sewer there, and would have found that the earth had settled, and would be likely to cause, or had already caused, a break in the pipe, or that such care would otherwise have prevented the use of a broken pipe in this street at the time of the accident.

In regard to the third request, the instruction was all that the defendant was entitled to. The judge said to the jury: "If the plaintiffs were suffocated with gas, and if the gas came from

the broken pipe, that of itself, would not justify you in finding that the defendant was negligent." He then submitted to them the question upon all the evidence whether there was negligence in having a broken pipe in that place.

The instruction in reference to the subject of the fourth request was correct and sufficient.*

What we have already said is applicable in part to the sixth and seventh requests. There was evidence that there were tests which could easily be applied by which to determine whether the dirt was properly tamped.

There was no error in the admission of evidence.†

*Exceptions overruled.*

---

\* This instruction was as follows: " If what happened is of such a kind and nature that the power of explanation is in the hands of the party against whom the case is brought, you have a right to say they ought to come forward and explain it, otherwise not. That is, the burden of proof is upon the plaintiffs to show that the fault lies on the part of the defendant, and unless that evidence is brought forward of such a kind and nature that the explanation of how it happened lies wholly within the knowledge of the defendant, then the defendant would not be called upon to explain."

† Three exceptions were argued by the defendant as to the admission of the following evidence: 1. A question to the police officer, " Whether or not you know whether any repairs were made on any pipe except the main pipe? " 2. The evidence of a witness, who testified that, on the day after the accident, he noticed a strong odor of gas on the premises before the broken pipe was removed, but who, on cross-examination, could not state whether there had been any digging in the street, or not. 3. A question to the defendant's superintendent, who had testified that he first went into the house " after the trouble occurred on the evening of January 19, 1898," and found no gas escaping, " Did you find some afterwards, after that evening? "