SUSANNA BLACK *vs.* BOSTON CONSOLIDATED GAS COMPANY (and six companion cases[1]).

Suffolk.    January 6, 1950. — March 10, 1950.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Negligence*, Gas.   *Proximate Cause.*

In an action against a gas company for personal injuries caused by gas permeating the plaintiff's residence from a circumferential break in a cast iron gas main laid in an adjacent street, evidence of the method of laying the pipe by the defendant's predecessor in business on a hard packed stratum in a frost zone, of the effect upon it of frost and roots of a large tree near by, of visible damage by the roots of the tree to a bordering sidewalk, and of lack of inspection by the defendant of the condition of the main for fourteen years, together with an opinion of an expert as to frost and roots as causes of the break, warranted findings that the break was caused by factors mentioned by the expert and that the defendant was negligent in failing to anticipate and prevent the break.

SEVEN ACTIONS OF TORT.    Writs in the Superior Court dated August 13, 1942.

The actions were tried together before *Broadhurst*, J.

[1] The companion cases are by Gladys Foley Black, Wilhelmina Burt, Frederick H. Black, administrator of the estate of Mellie T. Black, Frederick H. Black, Hollis M. Black, and Frederick H. Black, administrator of the estate of Harvey D. Black, against the same defendant.

*C. C. Petersen,* for the defendant.

*R. C. Sheppard,* (*W. J. O'Neill* with him,) for the plaintiffs.

RONAN, J.   Frederick H. Black, as administrator of the estate of his father, Harvey D. Black, brought an action to recover for the death and conscious suffering of his intestate.   As administrator of the estate of his mother, Mellie T. Black, he brought another action to recover damages for personal injuries sustained by her.   The remaining five actions are all for personal injuries sustained by the respective plaintiffs.   The jury returned verdicts in favor of all the plaintiffs.   The defendant excepted to the denial of motions for directed verdicts, to the admission of testimony of an expert, and to the refusal to grant requests for instructions.

It is not now contended that the evidence was insufficient to prove that on the second and third days of January, 1942, gas escaped from the defendant's broken main and permeated the residence occupied by Frederick H. Black and his parents, and that the death of the elder Black and the injuries to Mrs. Black and the other plaintiffs were caused by the inhalation of the gas while they were in the Black residence.   The plaintiffs do not contend that the defendant was negligent in not stopping the flow of gas or in not repairing the main after it had been notified of the break.   The principal question presented is whether upon all the testimony the defendant ought to have anticipated that a break would be likely to occur and negligently failed to prevent it.

The Black residence set back fifteen feet from the sidewalk, which was five feet wide and had a tar surface.   Between the sidewalk and the roadway was a strip of soil six to eight feet wide, which was referred to in the testimony as a tree belt.   An elm tree was located in this belt, and another elm tree was located on the outer edge of this tree belt and in the gutter and was about opposite the front door of the Black residence.   This tree was about seventy-five years old, and its trunk two feet above the ground was thirty inches in diameter.   It was about four feet from the

gas main. A six inch cast iron gas main was laid in the street in 1906 and has been in the possession and control of the defendant since 1928 when another company was consolidated with the defendant. Gas escaped into the Black residence from a circumferential break in this main.

There was evidence that this main had been laid about three or three and one half feet below the surface of the street; that it had been very cold for a week previous to January 2, 1942, and the ground was covered with snow; that the normal frost zone in this latitude for January was from four and one half to five feet; that in some places the main rested upon a hard packed stratum composed of stones eight to ten inches in diameter and fine sand, and in other places the bottom of the pipe was an inch above this hard material; that cracks in the tar sidewalk had appeared directly behind the two elm trees; that those cracks had been filled in by the city on several occasions; and that when the roots of the elm tree that had been located in the gutter were removed in 1948, it appeared that the main rested upon two roots which were five or six inches in diameter. An expert, whose qualifications are not attacked, testified that cast iron is the most brittle of all pipes, that in all probability this main was broken by bending, and that this type of break was caused by an external force. In answer to a question as to what effect he would expect from locating the main in the frost zone, he stated that ice lenses "can have formed and broken that pipe"; that frost heave may be a sufficient cause as "ice can exert a very strong pressure and very easily move a pipe of this kind to the extent necessary to break it"; that the proper method of laying a gas main in the soil in which this main was laid was to place a six inch cushion of sand under the main; that this was the standard manner of laying such a pipe and was in accord with engineering practice in 1906; that the purpose of the sand cushion was to protect a brittle pipe like this main from coming in contact with the hard material below it or with boulders or large stones and to give the even support to the main which was required when a main was laid in

this sort of material; that the roots upon which the main rested would be quite capable of breaking the main; and that a stone in the immediate vicinity of the main or upon which it rested would prevent the pipe from moving and, when some external force was exerted against the pipe in some place other than where the break occurred, such as the force exerted by the roots of a tree or ice, would break the pipe. This expert testimony, much of which was admitted over the defendant's exceptions, was competent as tending to show the cause of the break, *Hand* v. *Brookline*, 16 Mass. 324, 326; *Erickson* v. *American Steel & Wire Co. of New Jersey*, 193 Mass. 119, 125, 126; *Nugent* v. *Boston Consolidated Gas Co.* 238 Mass. 221, 236; *Friese* v. *Boston Consolidated Gas Co.* 324 Mass. 623, 628, and properly construed went farther than to show a mere possible or conceivable cause of the break and furnished sufficient basis for a finding that the causes mentioned either singly or collectively brought about the breaking of the main. *Marlow* v. *Dike*, 269 Mass. 38. *Duggan's Case*, 315 Mass. 355, 358. *Josi's Case*, 324 Mass. 415. The plaintiffs were not required to exclude all possibility that the break resulted from other causes, and they sustained the burden of proof by showing that there was a greater likelihood that the break was due to one or more of the causes mentioned by the expert resulting from the defendant's negligence, than to some other cause for which the defendant was not liable. *Navien* v. *Cohen*, 268 Mass. 427, 431. *Rocha* v. *Alber*, 302 Mass. 155. *Thomas* v. *Spinney*, 310 Mass. 749, 752.

The fact that the defendant did not lay this main in 1906 does not exempt it from liability if the jury found that it ought to have ascertained during the fourteen years it maintained this distributing system that the main was laid upon hardpan within the frost zone and that the roots of the tree located in the gutter were apt to interfere with the main, which was only four feet away. The damage done by the roots of this tree to the tar sidewalk was obvious and antedated the break by a long time. The damage which the roots were causing to the sidewalk might reason-

ably cause one to anticipate that damage might be incurred by the gas main especially since the tree was nearer to the main than it was to the sidewalk. The jury also had before them evidence that the defendant had no system for the inspection of the mains except to observe them as they were exposed when the city or some other agency happened to be making some excavation in the public ways for its own purposes. The jury did not find that the main was injured in 1939 when the city put a new water service pipe in to the Black residence, as otherwise they would have returned verdicts for the defendant in accordance with the instructions given to them by the judge. The jury were warranted in finding that the defendant should reasonably have anticipated that a break might occur; that it negligently failed to prevent it; and that the defendant did not exercise reasonable care in the maintenance and supervision of its gas main used by it to convey a substance of a danger- ous nature having a tendency to escape, which, if not kept confined to the main, might result in serious harm to another. *Lewis* v. *Boston Gas Light Co.* 165 Mass. 411. *Greaney* v. *Holyoke Water Power Co.* 174 Mass. 437. *Thompson* v. *Cambridge Gas Light Co.* 201 Mass. 77. *Nugent* v. *Boston Consolidated Gas Co.* 238 Mass. 221, 232. *Salem* v. *Salem Gas Light Co.* 241 Mass. 438, 442. *Bernier* v. *Pittsfield Coal Gas Co.* 257 Mass. 188, 190. *Barbeau* v. *Buzzards Bay Gas Co.* 308 Mass. 245, 247. *Harvard Furniture Co. Inc.* v. *Cambridge,* 320 Mass. 227, 229. *Dow* v. *Winnipesaukee Gas & Electric Co.* 69 N. H. 312, 315. *Vaillancourt* v. *Manchester Gas Co.* 88 N. H. 95.

There was no error in the denial of the motions for directed verdicts. The defendant's requests which were denied called for rulings that the cause of the break was a matter of conjecture; that the defendant had no reason to anticipate the break; and that there was no evidence to warrant a finding that the break was due to some one of the different specific causes mentioned by the expert. Each of these requests related to a question of fact which was properly submitted to the jury. The judge was right in

denying these requests. *Gregory* v. *Maine Central Railroad,* 317 Mass. 636, 641. *DeChene* v. *Willard,* 320 Mass. 324, 325–326. *Perry* v. *Boston Elevated Railway,* 322 Mass. 206, 207. *Barry* v. *Panich,* 324 Mass. 162, 165. Compare *Friese* v. *Boston Consolidated Gas Co.* 324 Mass. 623.

*Exceptions overruled.*