MUSOLINO LOCONTE COMPANY *vs.* BOSTON CONSOLIDATED
GAS COMPANY.

Suffolk.    November 5, 1952. — April 29, 1953.

Present: QUA, C.J., LUMMUS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Negligence*, Gas, Res ipsa loquitur. *Gas. Dangerous Activity.*

The mere fact that gas escaped from a break in a main of a gas company
laid in a street many years before did not warrant a finding of negli-
gence on the part of the company; the doctrine of res ipsa loquitur
was not applicable. [162–164]

A gas company is not subject to absolute liability, irrespective of its
negligence, for damage caused by gas escaping from a break in its
street main. [165]

TORT.    Writ in the Superior Court dated November 2,
1948.

At the trial before *Brogna*, J., a verdict for the defendant
was ordered.    The plaintiff alleged an exception.

*Charles M. Ewing*, for the plaintiff.

*Robert W. Cornell*, for the defendant.

QUA, C.J.    The object of this action of tort is to recover
for damage resulting when a quantity of macaroni in process
of manufacture by the plaintiff became chilled because of
the opening of windows made necessary by the escape of gas
from the defendant's street main into the plaintiff's premises
on Commercial Street in Boston.

The trial judge directed a verdict for the defendant upon
the opening by counsel for the plaintiff.

The material facts stated in the opening were in substance
these: About midnight of December 24, 1947, a great deal
of gas was found in the plaintiff's premises, so that there
seemed to be danger of an explosion.    The plaintiff turned
off the electric motors and opened the windows, and the
macaroni was irreparably damaged.    The gas came from a

broken or cracked valve of cast iron in the defendant's main in the street immediately outside of the plaintiff's premises. The main had been laid "in the 1870's" and had ever since been maintained and used by the defendant and its predecessors. The plaintiff has been unable to determine the reason for the break and knows of no explanation for it. "The fact is it did break and the gas escaped and caused the damage, and that, gentlemen, is our case."

The case presents the questions whether the mere facts of the escape of gas from a broken or cracked main laid many years before and damage resulting make a case for the jury either on the theory that such facts are evidence of negligence or on the theory that a gas company is liable for the escape of gas without negligence under the doctrine of *Rylands* v. *Fletcher*, L. R. 3 H. L. 330.

It is to be noted that the case discloses no evidence whatever of the defendant's negligence beyond a break or crack in the defendant's main laid in 1870, and the escape of gas therefrom to the plaintiff's premises. It would be difficult to conceive of a case more completely bare of evidence of specific omission or commission by the defendant which could be found to be negligent. There was no statement indicating that a main laid in 1870 should on that account be regarded with suspicion. It is well known that cast iron pipes remain in useful service for a great many years. If negligence can be found at all, it must be found solely from the facts of the break and the leak.

In the opinion of a majority of the court, based largely upon our past decisions, the law of this Commonwealth does not go so far as to permit an inference of negligence in such a case as this. It is true that a few of our earlier cases give support to the contrary view. In *Smith* v. *Boston Gas Light Co.* 129 Mass. 318, the court said that the escape of gas from a defective pipe, without adequate explanation, "was some evidence of neglect" (page 321). But on the same page it appears that there was other evidence of negligence, and this other evidence was made the ground of distinction in *Goldman* v. *Boston*, 274 Mass. 329, at pages 330–

331, presently to be mentioned. In *Carmody* v. *Boston Gas Light Co.* 162 Mass. 539, the court said that a jury might find negligence from the breaking of a pipe and the escape of gas (page 542), but in that case the verdict was for the defendant, and the real question was whether the instructions were sufficiently favorable to the plaintiff. In *Greaney* v. *Holyoke Water Power Co.* 174 Mass. 437, instructions contrary to the language in the *Smith* and *Carmody* cases were held to have been properly refused, but in the *Greaney* case also there was evidence in addition to the break and the leak, all of which was submitted to the jury. Since the *Smith,* *Carmody* and *Greaney* cases were decided there have been a number of cases against gas companies founded upon negligence in allowing the escape of gas from street mains; but in all of them, as we understand the reports, there was evidence of negligence in addition to the mere facts of the break and escape of gas, and all of them were treated as cases involving the question of negligence upon all the evidence without attaching peculiar significance to the mere facts of a break and a leak. We do not cite all these cases, since we do not think they bear upon the solution of the present problem, unless indeed the absence of reliance upon the mere facts of break and leak may be of some importance. The latest of these cases, which is more or less typical of the others, is *Black* v. *Boston Consolidated Gas Co.* 325 Mass. 505.

However, in *Goldman* v. *Boston,* 274 Mass. 329, a case arose where it became necessary to determine whether the mere facts of a break in a water pipe and escape of water therefrom would warrant a verdict. This court said, "The doctrine of res ipsa loquitur is not applicable. The water main may have settled and cracked from other causes than the defendant's negligence in laying the pipe or in caring for it. The act itself is evidence of negligence 'when the direct cause of the accident, and so much of the surrounding circumstances as was essential to its occurrence, were within the sole control and management of the defendants, or their servants, so that it is not unfair to attribute to them a prima

facie responsibility for what happened.' *Wing* v. *London General Omnibus Co.* [1909] 2 K. B. 652, 663, quoted in *Reardon* v. *Boston Elevated Railway*, 247 Mass. 124, 126" (page 330). Neither the case of the water pipe nor that of the gas pipe seems quite to fall within the reason of the rule quoted above as commonly applied. The company has control of its pipes only in a limited sense. They are buried, often under thick pavement, in miles of streets of which the company does not have control. They cannot be continually dug up for inspection. The company has no control over such "surrounding circumstances" as exceptionally heavy trucking through the streets, the laying of other pipes and of sewers, culverts, drains, conduits, and tracks and the laying of foundations of buildings and the condition of the surface, all of which, it would seem, might affect subterranean pressures, create strains, or weaken supports and so tend to cause breaks and leaks. The various gas and water cases hereinbefore mentioned seem to show that plaintiffs have experienced no very great difficulty in procuring evidence of negligence of defendants in meritorious cases. The case of *Goldman* v. *Boston* was followed in *Gerard* v. *Boston*, 299 Mass. 488. And see *Brian* v. *B. Sopkin & Sons, Inc.* 314 Mass. 180, 182. The *Goldman* and *Gerard* cases are the latest complete expressions of this court on the precise subject. The trial judge faithfully followed them.

We think there is no substantial difference between the gas cases and the water cases in respect to the question here involved. It may well be that, generally speaking, escaping gas is more dangerous than escaping water, and the degree of care required must be correlated with the danger. But that is a different problem. The question whether an inference of negligence ought to be drawn from a break in a pipe and the escape of its contents is essentially the same whether the contents consist of gas or of water. In *Goldman* v. *Boston* gas cases were cited, and *Smith* v. *Boston Gas Light Co.* was distinguished as hereinbefore stated. It seems to us that in the *Goldman* case the court intended to take a definite position in respect to both gas and water.

Doubtless opinions might differ as to what would be the better rule in a case of this kind; but when a debatable question has been considered and definitely decided in a reasonable manner it is usually the part of wisdom, in the absence of important new considerations, to adhere to the decision made. We may add that a glance at the decisions of other jurisdictions fails to disclose any such unanimity in opposition to our own as to induce us to depart from this principle. See 25 A. L. R. 262, 289; 90 A. L. R. 1082, 1097; 38 C. J. S., Gas, § 47, at page 746.

It is hardly necessary to emphasize that if the case disclosed any evidence beyond the bare facts of a break and escape of gas a quite different question would be presented. And nothing here said is to be taken as impugning the authority of any decisions relative to the escape of electricity to which very different considerations may well apply. See *St. Louis* v. *Bay State Street Railway*, 216 Mass. 255; *Burns* v. *Holyoke Street Railway*, 253 Mass. 443, 445.

The doctrine of *Rylands* v. *Fletcher*, L. R. 3 H. L. 330, does not apply to this case. All of our precedents proceed upon the ground that negligence must be shown. There is no liability without fault in cases of this kind. *Holly* v. *Boston Gas Light Co.* 8 Gray, 123, 126, 131.

*Exceptions overruled.*