302 P.2d 471

Edna D. WIGHTMAN, Administratrix of
the Estate of Ned L. Wightman, and Edna
D. Wightman, individually, Plaintiffs and
Appellants,

v.

MOUNTAIN FUEL SUPPLY COMPANY, a
corporation, Defendant and Respondent.

No. 8443.

Supreme Court of Utah.

Oct. 17, 1956.

Dwight L. King, Salt Lake City, for appellants.

Ray, Rawlins, Jones & Henderson, B. Z. Kastler, Salt Lake City, for respondent.

CROCKETT, Justice.

An explosion of natural gas and resulting fire destroyed the home of Ned L. and Edna D. Wightman in Spanish Fork, Utah at about 1 a. m. on March 16, 1954, killing Mr. Wightman, the only one at home at the time.

Mrs. Wightman sued the defendant gas company for damages to property and the

wrongful death of her husband. Since no specific acts of negligence could be shown on the part of the gas company, the plaintiff had to rely upoh res ipsa loquitur. At the close of plaintiff's evidence the trial court granted defendant's motion to dismiss; from this order she appeals.

The gas appliances in the Wightman home were located in the basement and consisted of a furnace and a water heater. These appliances and all of the gas piping beyond the gas meter had been installed by a local plumber, Willis M. Brockbank, who was employed by the Wightmans for that purpose. Gas company employees had installed the piping in as far as the meter, and the meter itself, and had connected the meter to the inside lines.

The sole question for review is whether the evidence was sufficient to justify submission of the case to the jury under the doctrine of res ipsa loquitur.

██ In order to invoke this doctrine it is generally recognized that the following elements must be present: (1) That the accident was of a kind which, in the ordinary course of events, would not have happened had due care been observed; (2) That it happened irrespective of any participation by the plaintiff; and (3) That the cause

thereof was something under the management or control of the defendant,[1] or for which it is responsible.[2]

It is to be conceded that elements (1) and (2) above are satisfied by the facts in the instant case. It is element No. (3) that here gives us concern. This requisite is generally phrased in terms of "exclusive control" over the instrumentality which caused the injury. However, as pointed out by Dean Prosser, the use of such terminology is often not realistically applicable to the situation. He makes reference to examples of malfunctioning machinery, defective appliances and other situations where the instrumentality has passed beyond the control of the person responsible for its condition and is being used by and under the complete control of the plaintiff. As suggested by that eminent authority, it would seem more accurate to appraise the situation in terms of the defendant's *responsibility* for the instrumentality, its condition or function, rather than merely its control. Whether it is in the defendant's exclusive control or not, if the evidence reasonably eliminates other explanations than the defendant's negligence, that provides the basis upon which the jury may be permitted to infer that it was defendant's negligence which resulted in the injury.[3] We are therefore not here

1. See Moore v. James, 5 Utah 2d 91, 297 P.2d 221.
2. Prosser on Torts, 2nd Ed., p. 206.
3. Ibid, p. 206. Dean Prosser states: "There are other cases, however, in which it is clear that 'control' is simply the wrong word * * *. It would be far better, and much confusion would

concerned with what degree of control the gas company had over the pipes leading into the meter and the meter itself which it had installed. We proceed upon the assumption that the gas company was responsible for that part of the system, leaving the responsibility upon the Wightmans for their house piping, furnace and gas water heater.[4]

■■ This brings us to the issue, crucial to the plaintiff's case, whether her evidence was sufficient upon which to base a finding that the source of the explosion was in the area for which the gas company was responsible. Such proof cannot rest upon speculation or conjecture, nor upon a mere choice of probabilities. To give rise to a jury question there must be something in the evidence from which the jury could reasonably believe that there is a greater probability that the explosion occurred in that part of the installation than in the pipes or appliances installed by and under the care of the Wightmans.[5] Only if there is some such basis in the evidence would there be any foundation to permit the jury, under res ipsa loquitur, to infer that some defect or lack of due care in the gas company's part of the installation caused the leak and the resulting explosion.[6]

In support of the proposition that there is a basis in evidence from which the jury could reasonably find that the explosion occurred in the gas company's part of the installation, plaintiff makes the following points:

(1) The house system had been installed by a competent, licensed plumber and was adequately tested for leaks by soaping all the joints and putting 35 pounds of air pressure in the lines.

(2) The furnace and water heater were of standard make and equipped with safety devices to automatically shut off the gas supply if the pilot goes out; they were also vented to the outside so that any gas escaping within them would go up the flue and not be released in the home.

(3) The pilot light in the furnace had gone out two days before the explosion. Mr. Brockbank, the plumber, had been called to relight it, at which time he checked the

be avoided, if the idea of 'control' were discarded altogether and we were to say merely that the apparent cause of the accident must be such that the defendant would be responsible for any negligence connected with it."

4. Loos v. Mountain Fuel Supply Co., 99 Utah 496, 108 P.2d 254, 257 this court said: "A supplier of gas which does not install gas pipes or appliances on another's premises, does not own or control them, has no duty to inspect them, and has no actual knowledge of leaks or defects, is not liable for damages resulting from a gas explosion on said premises."

5. Alvarado v. Tucker, 2 Utah 2d 16, 268 P. 2d 986, 988. "This [preponderance of the evidence] means the greater weight of the evidence, or as sometimes stated, such degree of proof that the greater probability of truth lies therein."

6. See Matievitch v. Hercules Powder Co., 3 Utah 2d 283, 282 P.2d 1044.

furnace and control mechanisms which were operating properly.

(4) The pressure in the lines beyond the meter is much less than the pressure in the lines of the gas company. It is, therefore, suggested that any leak would be more likely to occur where the pressure is greatest.

(5) Plaintiff's expert, Mr. Abelhouzen, testified as to the properties of gas in regard to such an explosion: That it is lighter than air; therefore, if released in a closed room would first go to the ceiling and gradually work down as it accumulates; that the greater the amount of gas the greater the explosion; that the explosive force is greatest at the point of ignition; that it must be ignited by a flame or spark. From these facts plaintiff theorizes that since Mr. Wightman was apparently in bed, the only source of ignition would be from the pilot light, which, therefore, must have been burning at the time, further reasoning that if the leak had been in the house lines, there would have been no gas getting to the pilot light to keep it burning.

(6) The expert also testified that the source of gas is where the final burning will be found; and the evidence indicated that gas was observed to be burning in the vicinity of the meter after the explosion.

(7) Gas company employees removed the meter from the home shortly after the explosion.

In contravention of the above arguments defendant points out the following to show the impossibility of pinpointing the cause of the explosion:

(1) The installation and testing by Brockbank had been done nearly four years prior to the explosion. Furthermore, a fair interpretation of the evidence shows that the installations made by the gas company had also been tested.

(2) Plaintiff's appliances had worked perfectly for four years, yet two days prior to the explosion the pilot light in the furnace had gone out. This could indicate that something was wrong. When Brockbank came to check the furnace he merely operated the thermostat a time or two and checked the draft. He did not examine the water heater or any of the pipes or fittings inside the house.

(3) There is nothing to show that the leak was caused by pressure and any such conclusion would be mere speculation.

(4) There could have been a leak in the house lines and still have been enough gas to keep the pilot light burning because the quantity of gas required to operate a pilot light is very slight. At any rate, even if the pilot light had gone out, the gas could have been ignited by other means.

(5) Conceding that the pressure in the house lines was less than in the gas company's service lines, the amount of gas re-

quired to operate a gas furnace, even flowing under low pressure, could accumulate enough gas to cause such an explosion in a very short time.

(6) The fact that the flame was burning at the meter site after the explosion indicates nothing; since the entire house was demolished, naturally gas coming in from the defendant's service line might still be burning.

(7) The meter was removed for inspection and testing, the results of which, and the meter itself, were available to plaintiffs.

 We are mindful of the rule that where there has been a dismissal at the conclusion of the plaintiff's evidence, we must review it and every inference which may fairly be drawn therefrom in the light most favorable to the plaintiff;[7] and of the desirability of leaving the decision of questions of fact to juries whenever the evidence is such that reasonable minds may differ.[8] Nevertheless, a finding of liability for damages must rest on something substantial. We believe that the trial court correctly decided that there was no reasonable basis shown in the evidence which would justify a conclusion that there was any greater likelihood that the explosion occurred in the gas company's part of the installation than in the house piping or appliances for which the Wightmans were responsible. It thus did not err in refusing to submit the matter to the jury.

 Finally, plaintiff makes the contention that it was not the pipes, appliances or meter which caused the explosion, but the gas itself, which is under the exclusive management and control of the defendant, so the rule of res ipsa loquitur would apply. This position cannot be sustained. If such were the case, the rule could be invoked against the supplier of gas in any case of injury resulting therefrom, regardless of whether the facilities were installed by the gas company and regardless of the amount of control or the kind of care exercised over them by others. This would be an impractical and insuperable burden which is not imposed by the law in Utah nor of other jurisdictions.[9]

The ruling of the trial court is affirmed. Costs to respondent.

McDONOUGH, C. J., and WADE, J., concur.

HENRIOD and WORTHEN, JJ., concur in the result.

7. Martin v. Stevens, Utah, 243 P.2d 747; Morris v. Farnsworth Motel, Utah, 259 P.2d 297.
8. Earle v. Salt Lake & Utah R. Corp., 109 Utah 111, 165 P.2d 877; Stickle v. Union Pacific R. Co., Utah, 251 P.2d 867.
9. See Loos v. Mountain Fuel Supply, note 4 supra, and cases cited therein.