365 P.2d 633

Sherman V. LUND, Plaintiff, Respondent and Cross-Appellant,

v.

MOUNTAIN FUEL SUPPLY COMPANY, Defendant and Appellant.

No. 9389.

Supreme Court of Utah.

Oct. 25, 1961.

Kastler & Crawford, Salt Lake City, for appellant.

Omon & Saperstein, Salt Lake City, for respondent.

CALLISTER, Justice.

Plaintiff brought this action against defendant seeking damages for injury to his lawn, flowers, shrubs and trees alleged to have been caused by the saturation of the soil with natural gas which escaped from a leak or break in the defendant's gas lines. The jury found the issues in favor of plaintiff and awarded damages in the amount of $1,800. Defendant appeals from this verdict and plaintiff cross-appeals from a denial of his motion for an additur to the awarded damages.

Defendant corporation is a public utility company engaged in the sale and distribution of natural gas. Plaintiff was a customer at his home in Bountiful, Utah. The defendant maintained a two-inch main line which ran east and west across the street from plaintiff's residence. A three-quarter inch service or feeder line ran from the main line to the house.

In the latter part of May, 1958, plaintiff and his wife noticed a wilting and discoloration of their lawn and foliage. They inquired of a county farm agent, who suggested they contact the defendant, which they did on June 17, 1958. An immediate investigation was made by two of defendant's employees, who discovered a break in the service tap near the main line, directly across the street from plaintiff's house. They ascertained that this break had permitted natural gas to escape into the surrounding soil, including plaintiff's yard. The line was immediately repaired.

It is undisputed that the main pipeline, at the point of the break, was 16 inches below the surface of the ground. However, defendant contends, and two of its employees so testified, that the pipe had initially been placed three feet below the

surface, but that the grade had been lowered by the construction of a driveway to a new home directly across the street from plaintiff's residence. This was disputed by the plaintiff who maintained that the pipe was never buried deeper than 16 inches.

There was evidence introduced to the effect that a heavy cement truck with dual wheels had become stuck directly over the main line and tap, and that it was the pressure of the weight of the truck which caused the break. The record shows that the tire tracks were approximately 12 inches in depth and within four inches of the main line.

The jury, who viewed the scene and the gas line, evidently concluded that the pipe had been buried only 16 inches and found that this was not a sufficient depth and that the defendant was therefore negligent. In this regard, defendant contends the trial court erred in submitting the issue to the jury in the absence of testimony regarding any standard as to what is a proper depth that natural gas lines should be buried in the earth.

▇▇▇▇ Defendant argues that the instant situation is analogous to that found in medical malpractice cases in which this court has held that evidence must be submitted showing that the act complained of was not in accordance with accepted standards of professional skill.[1] We do not think the analogy lies. When facts may be ascertained by the ordinary use of the senses of lay witnesses or jurors, it is not necessary that expert testimony be produced and relied upon.[2] The question of whether 16 inches was a proper and safe depth at which to bury the pipe, or a proper and safe depth to maintain it, in an area where residential construction was being carried on and where one could reasonably anticipate heavy vehicular traffic, was properly within the unaided competence of the jury to determine.

Defendant next contends that the trial court committed prejudicial error in giving the following instruction to the jury:

"No. 6

"1. Explanation:

"The court desires to ascertain the extent the plaintiff has been damaged as a result of gas seepage into his property as a result of a break or leak in the line across the street referred to in the evidence as having been repaired June 17, 1958. The measure of such loss equals the difference in the fair market value of the house and lot of the plaintiff immediately before and immediately after the injury and damage to his property were inflicted but must not be less than the actual value

---

1. See Huggins v. Hicken, 6 Utah 2d 233, 310 P.2d 523.

2. Fredrickson v. Maw, 119 Utah 385, 227 P.2d 772.

of plants destroyed plus those not totally destroyed or damages calculated by determining the value of the plants before damage and their value after the damage.

"Answer the following question if you can do so in light of the evidence as you view it:

"1-A What is the total damage proven by a preponderance of the evidence to be proximately caused by the seepage of gas in question?

"Answer: $1,800.

"2. Explanation:

"The parties have agreed that the gas that seeped into the plaintiff's yard at the time in question came from a break or leak located generally where the feeder line that serves the Lund property connects to the main line. The court desires to ascertain certain facts concerning the cause of the break or leak. Therefore, you as jurors are asked to answer certain questions set forth below if you are able to do so as you view the evidence:

"2-A Is it at least just as probable that one of the proximate causes of the break or leak was the passage of vehicles over the line in the vicinity of the break or leak as it is that such alleged event was not a proximate cause of the break or leak?

"Answer: Yes.

"2-B Do you find it proven by a preponderance of the evidence that the Defendant's main line and or feeder line to the Lund property was negligently installed or permitted to remain too near the surface, thereby subjecting others to an unreasonable risk that it would be broken and plant life damaged?

"Answer: Yes.

"2-C If you have answered question 2-B 'yes' then answer this question if you can: If you answer question 2-B 'no', pass this question:

"Was the negligence found in 2-B a proximate cause of the break or leak complained of?

"Answer: Yes."

Defendant assigns several reasons as to why the instruction is erroneous. We need consider only one, namely, that it, in effect, plainly suggested to the jury that they find the issue of negligence in favor of the plaintiff. The instructions asked the jury to assess damages prior to their determination of the issue of the defendant's negligence, and if so, whether such negligence was the proximate cause of the injury. We observe that the instructions and interrogatories as formulated fall short of the desired simple and concise presentation of the issues for their determination. E. g. 2-A is particularly obscure and difficult to visualize as being meaningful to a jury in

their attempt to settle the issues in the law suit.

██ Certainly, the ordinary and long standing procedure is to instruct the jury in such a manner that they will determine liability before considering the matter of damages. While it is true that there is no fixed rule as to the order of the instructions, it being a matter of choice with the court,[3] nevertheless, the instructions must not tend to mislead or influence the jury.[4] The instant instruction could very well convey to the jury the impression that the trial judge was of the opinion that plaintiff was negligent and that its negligence was the proximate cause of the damages.

Furthermore, the trial court, after reading the instructions, advised the jury that Instruction No. 15 was in error. This instruction was read to the jury and included in the written instructions submitted to them. It instructed them in part as follows:

"* * * The fact that the court has instructed you concerning damages, is not to be taken as any indication that the court either believes or does not believe that plaintiff is entitled to recover such damages. The instructions in reference to damages are given as a guide in case you find from a preponderance of the evidence that the plaintiff is entitled to recover, as it is the court's duty to state to you fully all of the law applicable to this case, but should your determination be that there should be no recovery, then you will entirely disregard the instructions given you upon the matter of damages."

This is the cautionary instruction usually given which advises the jury that from the fact that they are instructed concerning damages they should not assume the court believes that the plaintiff is entitled to recovery. However, in the instant case the trial court cancelled the effect of that instruction by further telling the jury:

"The court notices some error in this instruction [15]. Because of the use of special interrogatories I will ask you to fix damages whatever you find, regardless of what your other answers are. I want you to fix damages regardless of what your other answers are, just for my information."

The foregoing could hardly do other than give the jury the impression that the judge believed that the plaintiff was entitled to recover and that he wanted to know the amount of the damages in the event he had to set the jury's verdict aside if they should find the issues of liability in favor of the defendant.

3. 1 Reid's Branson, Instruction to Juries, 3d Ed., p. 249

4. 3 Am.Jur., p. 644.

We hold the giving of Instruction No. 6, together with the trial court's comments concerning Instruction No. 15, to be prejudicial error. In view of this holding, it is not necessary to consider plaintiff's cross-appeal.

Reversed and remanded for new trial. No costs awarded.

WADE, C. J., and McDONOUGH, HENRIOD and CROCKETT, JJ., concur.