386 P.2d 408

**Sherman V. LUND, Plaintiff and Appellant,**

v.

**MOUNTAIN FUEL SUPPLY COMPANY, Defendant and Respondent.**

**No. 9835.**

Supreme Court of Utah.

Nov. 12, 1963.

Henriod, C. J., dissented.

Milton A. Oman, Salt Lake City, for appellant.

B. Z. Kastler, Jr., John Crawford, Jr., Salt Lake City, for respondent.

WADE, Justice.

Sherman V. Lund, appellant herein, brought this action to recover damages to his home as a result of a gas leak from the main service line of the Mountain Fuel Supply Company, respondent herein, which flowed into appellant's yard, saturating it and injuring and killing trees, shrubs and plants. This is a second appeal on the same cause of action. In the first appeal this court reversed because of erroneous instructions.[1] In the instant appeal the court, upon respondent's motion, dismissed the action at the conclusion of appellant's evidence and excused the jury because it was of the opinion that appellant's evidence had failed to establish the negligence of the respondent Mountain Fuel Supply Company.

The evidence was uncontradicted that there was a gas leak from the main service line of the Mountain Fuel Supply Company at the junction of that main line, across the street from appellant's property with the service line which supplied appellant with natural gas fuel. The natural gas which escaped from the Mountain Fuel Supply Company's main line followed the service line and saturated the grounds of appellant's home causing the damage to the plants complained of herein. The evidence also disclosed that this main line was laid in a public street at a depth of

1. Lund v. Mountain Fuel Supply Company, 12 Utah 2d 268, 365 P.2d 633.

39 inches, which was what respondent Mountain Fuel Supply Company considered a proper depth, and that in the case of a slight hillside or deviation in the contour of the land, the pipe line would follow the contour of the land in most instances. The maintenance, repairs and inspection of these lines were under the exclusive control of the company. No regular inspection of the lines was made after they were installed but at times, perhaps every few years, an inspection would be made to determine whether any gas was escaping; otherwise, no inspection was made unless there was a complaint.

Appellant contends the court erred in concluding that the evidence was insufficient to justify the submission to the jury of respondent's negligence under the doctrine of res ipsa loquitur. We agree.

In Wightman v. Mountain Fuel Supply Company,[2] in which the plaintiff was unable to show any specific acts of negligence of the gas company in an explosion of natural gas which destroyed her home and killed her husband, this court pointed out that in order to invoke the doctrine of res ipsa loquitur three elements must be present: "(1) That the accident was of a kind which, in the ordinary course of events, would not have happened had due care been observed; (2) That it happened irrespective of any participation by the plaintiff;

and (3) That the cause thereof was something under the management or control of the defendant, or for which it is responsible."

In the instant case in the absence of other evidence to the contrary, it would be reasonable to find that if due care had been observed in the installation, maintenance and inspection of respondent's main service pipeline, the damage caused by the seeping gas would not have occurred. The break in the gas line did not occur on appellant's property nor was there any evidence that any act of his contributed toward the break or the resultant damage. On the contrary, there was evidence that the respondent installed, maintained and inspected the gas line and that it was the one who determined that 39 inches below the surface was a proper and safe depth in which to lay its main gas service line. Under such circumstance the fact that an unexplained break in respondent's pipeline did occur is sufficient to invoke the doctrine of res ipsa loquitur on the question of negligence, for if the due care necessary for the carriage of a known dangerous substance such as natural gas had been used in the pipe's installation, maintenance and inspection, there ordinarily would not have been a break and a continuance of the leakage saturating appellant's yard with natural gas.[3]

2. Wightman v. Mountain Fuel Supply Company, 5 Utah 2d 373, 302 P.2d 471.

3. North Central Gas Co. v. Bloem, (Wyo.), 376 P.2d 382; 9 Wigmore on Evidence,

We are aware that there are cases in other jurisdictions which have held the evidence in the instant case without evidence of other negligence would be insufficient to invoke the doctrine of res ipsa loquitur so as to permit the submission of the question of respondent's negligence to a jury. However, we are not impressed with their reasoning as applied to the evidence in the instant case and are not inclined to follow such cases. Since the sole responsibility for the installation, maintenance and inspection of the gas pipe is respondent's, and appellant having proved its breakage and consequent damage to his property through no act of his own, he has carried his burden of proof, and the duty to rebut the inference of lack of due care should be upon respondent. The court therefore erred in dismissing appellant's action without submission to the jury on the question of negligence.

Reversed. Costs to appellant.

CALLISTER and CROCKETT, JJ., concur.

McDONOUGH, J., concurs in the result.

HENRIOD, Chief Justice (dissenting).

I dissent. Although plaintiff alleged that the gas pipes, 39 inches below the surface of the public road, were under the exclusive control of defendant and a pre-trial order so concluded, plaintiff nonetheless offered evidence of that fact, which apparently failed to substantiate it, causing the trial court to determine, after hearing the evidence, that such fact was not shown. The court consequently concluded that the doctrine of res ipsa loquitur did not apply, as a matter of law.

I know of no rule that would prevent a trial court that has stated a fact at pre-trial which a plaintiff could rely on, is precluded from arriving at a different conclusion, if plaintiff in presenting evidence at the trial, himself disproved the fact he might not have had to prove.

It is significant that after the court finally concluded there was no substantial evidence of control in defendant, plaintiff, in asking that the case be re-opened, made a proffer of proof of facts which could have been presented at the trial before the case finally was submitted, to show the defendant *did* have control. If the facts adduced by plaintiff at the trial are inconsistent with a pre-trial order, I take it that such order is not controlling in determining the true facts of the case.

The trial court obviously does not share the conclusion of the main opinion that "The maintenance, repairs and inspection were under the exclusive control of the company," since the court concluded that the evidence did not substantiate this gratuity.    . . .

3rd Ed., pp. 377–384; Prosser on Torts, 2d Ed. 199, and Prosser's article on Res

Ipsa Loquitur in California, 37 California Law Review, pp. 183–199.

I am of the opinion that the trial court, after weighing the facts adduced by plaintiff, properly applied, and the main opinion has misconceived the law as stated in Musolino Le Conte Co. v. Boston Gas Co.,[1] which seems to be almost identical factually with the case here, in which it was said:

"[T]he law of this Commonwealth does not go so far as to permit an inference of negligence in such a case as this. * * * [T]here have been a number of cases against gas companies founded upon negligence in allowing the escape of gas from street mains; but in all of them * * * there was evidence of negligence in addition to the mere facts of the break and escape of gas, and all of them were treated as cases involving the question of negligence upon all the evidence without attaching peculiar significance to the mere facts of a break and a leak. * * * The company has control of its pipes only in a limited sense. They are buried, often under thick pavement, *in miles of streets of which the company does not have control.* They cannot be continually dug up for inspection."

It occurs to this writer that to conclude as does the main opinion here, under the facts of this case, would impose absolute liability on a gas company whose control of transmission facilities is not plenary, but completely subordinate and subservient to government control of the terrain where such facility is permitted to be placed, and secondarily subject to either partial control or interference by other public utilities operating water systems, telephone lines, storm sewers, drainage facilities, telegraph cables and the like. To conclude otherwise would be unreasonable and would ignore completely the fundamental principle that one, to be negligent in operation of an erstwhile efficient mechanism, at least must have reasonable notice of and an opportunity to rectify the difficulty.

1.   (1953) 330 Mass. 161, 112 N.E.2d 250.