ANTHONY YUKNA vs. BOSTON GAS COMPANY & another
(and two companion cases[1]).

Suffolk.    November 22, 1972. — January 19, 1973.

Present: ROSE, GOODMAN, & ARMSTRONG, JJ.

*Negligence,* Gas, Contractor.

In an action against a gas company and a contractor for damages
   sustained by the plaintiffs in an explosion in an apartment house
   resulting from gas leaking into its cellar from a break in the cast iron
   gas main under the public way outside the building, during the course
   of a reconstruction of the way by the contractor which involved the
   use of many heavily loaded trucks, a finding of negligence on the part
   of the contractor was warranted by evidence that he knew a gas main
   was under the way but never inquired about its location, depth, or
   composition, and that after notifying the gas company of the
   proposed excavation, he proceeded therewith without having seen
   any "return notice" by the company "designating the location" of the
   main as required by G. L. c. 82, § 40, [66]; and a finding of
   negligence on the part of the gas company was warranted by evidence
   that its inspector had never seen a plan locating the main and its
   service pipes and never located them for the contractor, that the
   inspector had no instructions as to watching the trucks with reference
   to possible breakage of the main, that the main was near the end of its
   useful life and was weakened by corrosion, and that the company's
   records showed the main was made of steel [66-67].

THREE ACTIONS OF TORT. Writs in the Superior Court
dated September 3, 1964, November 2, 1965, and May 16,
1966.
   The actions were tried before *Ponte,* J.
   *Daniel A. Lynch* for Baker & Co., Inc.
   *John B. Johnson (Robert W. Cornell* with him) for
Boston Gas Company.
   *George F. Hurley* for Anthony Yukna & others.
   *John J. Ryan* for John J. Donovan & others.

---

[1] The companion cases are: Mary T. Donovan & others *vs.* Boston Gas
Company & another and Neil Noonan *vs.* Boston Gas Company.

ARMSTRONG, J.   These three actions arise from a gas explosion on May 20, 1964, which damaged a three-story, six-family house owned by Anthony Yukna on Savin Hill Avenue in Dorchester. Several tenants in Yukna's house owned personal property damaged in the explosion, and some suffered bodily injuries. The plaintiffs in these actions are Yukna, the landlord, and several of his tenants. The defendants are the Boston Gas Company and Baker & Co., Inc., a contractor which was at the time engaged in resurfacing a portion of Savin Hill Avenue including the portion in front of Yukna's house.

The three actions were tried together before a jury, and the trial judge denied motions for directed verdicts by both defendants. The jury returned verdicts for the plaintiffs, against both defendants in two actions, and against the Boston Gas Company, the only named defendant, in the third. The cases are here on the exceptions of both defendants to the judge's refusal to direct verdicts in their favor.

The defendants concede that there was evidence from which the jury could find that the explosion resulted from gas leaking into Yukna's cellar from a break in the six-inch cast iron main under Savin Hill Avenue outside the Yukna house. Each company argues, however, that it was not negligent and that in any event the break was not caused by its negligence. The jury's verdict must be sustained if there was any evidence from which the jury might have found negligence. Therefore, the evidence must be considered in its aspect most favorable to the plaintiffs.

Early in 1964, Baker & Co., Inc., entered into a written contract with the City of Boston for the reconstruction of about 1200 feet of Savin Hill Avenue, from a point about 1,150 feet east of the Yukna house to a point about 50 feet west of it. Savin Hill Avenue is about 22 feet wide from curb to curb and the Yukna house is located on the south side. Under the contract, Baker & Co., Inc., was required to excavate to a depth of 18 inches, spread 12 inches of crushed stone and gravel, and finally resurface with macadam.

In accordance with the requirements of G. L. c. 82, § 40, Baker & Co., Inc., by letter dated March 31, 1964, sent

notice to the Boston Gas Company and other utilities of its intention to excavate. Under this statute, a gas company is required to inform the contractor of the location of any pipes or conduits under the area to be excavated. The records of the Boston Gas Company indicate that on April 3, 1964, it sent to Baker & Co., Inc., a plan showing the location of its main, but describing it erroneously as being made of steel, a stronger material than the cast iron of which the main was actually made. The records of Baker & Co., Inc., do not indicate receipt of any plan from Boston Gas Company.

On May 6, 1964, Baker & Co., Inc., began excavating. Because it was required under its contract with the City to keep the road open at all times for public travel, it could only excavate one side at a time. Baker & Co., Inc., therefore excavated the south side first, beginning at the east end. By May 15, 1964, the excavation of the south side was completed to the west end of the job. Baker & Co., Inc., then built a 10 to 14 foot long ramp of dirt and gravel to enable vehicles to drive from the unexcavated portion of Savin Hill Avenue into the excavated south side. Having thus provided for the traffic flow, excavation began on the north side. On May 19, having completed the excavation of the north side opposite the Yukna house, Baker & Co., Inc., extended the ramp at the west end of the project to the full width of the street.

The gas main which broke ran under the south side of the street, about five feet from the curb and 34 inches below the street surface. On May 15, after the excavation of the south side was completed, 16 inches of fill remained over the main. On May 19 or 20, Baker & Co., Inc., spread 12 inches of gravel on the south side. During this period many trucks passed over the street, some carrying excavated material from the job, some carrying crushed stone and gravel to the job, and some having no relation to the job at all. Trucks carrying excavated material away from the project weighed approximately 22 tons loaded. After 4:00 P.M. each night, work on the job terminated, and the road was open for

travel. No restriction was imposed on the use of the road by the general public, and no watchman was assigned to the job.

The explosion occurred about 2:30 P.M. on May 20, in Yukna's celler. It lifted the house off its foundation and dropped it into the cellar hole. After the explosion, a break in the bottom of the main was discovered approximately 25 feet west of Yukna's gas service line, and under the bottom of the dirt and gravel ramp at the west end of the job. The main, made of cast iron, had been laid by the Boston Gas Company in 1899. The soil under the break was described as "rocky, sandy, and loosely compacted." An expert testified that in his opinion the weight of passing trucks exceeded the stress-bearing capacity of the main, causing a hairline crack, which grew larger until it was 1/16 of an inch wide; that gas leaking from this break into the Yukna cellar reached an explosive limit and was ignited by electrical sparks or pilot gas flames in the cellar; that the normal life expectancy of the cast iron main in the type of soil it was laid in was about 65 to 75 years; and that the exterior of the main showed evidence of corrosion, indicating that it was in weakened condition and "had pretty much reached the end of its normal life expectancy."

The construction superintendent for Baker & Co., Inc., testified that he knew there was a gas main under Savin Hill Avenue, but he did not know exactly where it was, nor how deep it lay, nor what material it was made of. The Boston Gas Company assigned an inspector to the project, whose job was to locate the gas main and the service pipes for the contractor, and to make sure that they were not damaged. The inspector never located the main or the service lines for Baker & Co., Inc., nor was he in a position to do so, since he had never seen a plan indicating the location of the main or its depth. The construction superintendent never inquired about the main's location or depth or what it was made of. He did not feel it was necessary, in order to do his job properly, to make any of these inquiries. The gas company inspector, although he observed gravel

trucks passing over the excavated area, testified that he was never instructed to watch for the size of trucks, or their speed, or number of axles.

From all this evidence, the trial judge was justified in submitting the cases to the jury against both defendants.

General Laws c. 82, § 40, imposes on the contractor a duty to see that excavations in a public way are performed "in such manner, and such reasonable precautions taken, as to avoid damage to the pipes or conduits in use under the surface of said way." Knowing there was a gas main under Savin Hill Avenue, yet proceeding with the excavation without having seen any "[p]roper return notice . . . made by . . . [the Boston Gas Company] designating the location . . . of pipes or conduits in that portion of the public way in which the excavation is to be made," as required by § 40, and having made no inquiries to ascertain their location, Baker & Co., Inc., can be found not to have taken reasonable precautions to avoid damage to those pipes and conduits.

General Laws c. 82, § 40, probably also imposes on a gas company a duty to take reasonable precautions to avoid damage to mains and pipes in the area of excavation. But it is not necessary to decide whether § 40, by itself, requires more of a gas company than the "[p]roper return notice . . . designating the location . . . of pipes or conduits." The danger of explosion when gas escapes into a celler is so great that under the common law gas companies are held to the exercise of a high degree of care to keep their gas confined. *Greaney* v. *Holyoke Water Power Co.* 174 Mass. 437, 440. A gas company, after placing its main in a public way, is bound thereafter to use due care in maintenance not only under the conditions of travel existing when the main was built but coming into existence afterwards, whether by resurfacing of the street, or the establishment of streetcar lines, or the installation of other utilities. *Nugent* v. *Boston Consolidated Gas Co.* 238 Mass. 221, 232. An inference of negligence may not be drawn merely from a break in the main and leakage of gas, without more. *Musolino LoConte Co.* v. *Boston Consolidated Gas Co.* 330 Mass. 161. But

when a gas company is notified of an excavation project which may subject its pipes to greater than usual risk of breakage, it is permissible for a jury to find that the gas company should supply an inspector to take special precautions against the risk. *Koplan* v. *Boston Gas Light Co.* 177 Mass. 15, 20-21. The jury could find on the evidence in this case that the inspector sent by Boston Gas Company was negligent in failing to ascertain the facts necessary to estimate the danger of breakage to the main, and to inform the contractor of those facts; that the cast iron main was near the end of its useful life; that corrosion had weakened it; and that the company should have anticipated this danger, and made excavations to ascertain the actual condition of the main. That its records inaccurately showed the main to be of steel cannot lessen the standard of care required of the company; if anything, it is further evidence of the company's negligence.

Both Baker & Co., Inc., and Boston Gas Company argue that further precautions would not have avoided the accident, because under the contract Baker & Co., Inc., was obligated to do the job in precisely the way it was done and no other. And Boston Gas Company argues, in the same vein, that even if it had apprised the contractor of the danger to the main, the contractor would have proceeded in the same manner. This, of course, the jury could believe or not. And although it is hard to conceive that the contract, which is not before us, is so restrictive as to preclude any precautions against gas main breakage, it is clear that nothing in the contract can operate to relieve the two defendants of their statutory and common law obligations to take such precautions.

*Exceptions overruled.*