GEORGE G. GARDNER & another[1] *vs.* BOSTON GAS COMPANY; DOMENIC SCIPIONE, third-party defendant. March 8, 1982. The plaintiffs seek to recover from the gas company (the company) for fire damage in a duplex house in Clinton allegedly caused by the company's negligence. After the denial of motions for directed verdicts, the jury returned a verdict for the plaintiffs in an amount stipulated by the parties. The judge then granted the company's motion for judgment notwithstanding the verdict under Mass.R.Civ.P. 50(b), 365 Mass. 814-815 (1974).

The damage was most severe in the vicinity of a gas stove in the living room of the house. The stove was about "eight or ten inches," or even "twelve inches," away from the wall behind it. There was a gas stove in the kitchen behind the living room gas stove but separated from the latter by the wall between the kitchen and the living room and by a chimney. A hole was burned through the floor under the union connecting the living room stove to a gas supply pipe along the wall about four inches above

---

[1] Mary A. Gardner.

the wood floor. From a point directly behind that union there was a charred inverted triangular area on the wall extending upward. Peter O'Malley, an employee of the company, went on September 11, 1975, to the premises to turn on the gas which had been turned off. He was there from 3:04 P.M. to 3:40 P.M. on the eleventh. A fire occurred at about 4:55 A.M. on September 13, 1975. O'Malley, also a call fireman, returned with the fire department to help fight the fire.

O'Malley's seemingly careful testimony was that on the eleventh he "visually observed" the two stoves, and then went down to the cellar without Scipione, who had been working on the premises for some days. He checked and turned on the gas meter and then tested first the kitchen stove, and then the living room stove. On the connection of the stove with the pipe, he testified that he checked the union joint and nut behind the living room stove for tightness with the liquid "leak detector" but not with his hands. After the fire when O'Malley saw the union and heater, neither of them appeared burned.

Scipione for two weeks had been refurbishing the house, including putting mahogany veneer wood panels on the walls of the living room. He testified that the panel placed behind the gas stove was about seven feet six inches high and about twenty-eight inches wide. He had to cut a hole through the center of it for the flue of the stove and had removed the flue to install the panel. The stove was about twenty-eight to thirty-six inches high above the floor. Scipione knew how to disconnect the living room stove but denied touching it. The panel behind the stove was there after the fire. O'Malley testified that he saw no panel there on the eleventh of September but Scipione did not remember saying in a deposition that he did panel work in the area on the day of the fire. He also testified it was in place before the gas was turned on. Scipione had the gas stoves in the living room and the kitchen running the night before the fire and the night of the fire. Scipione never smelled gas while he was working on the premises, nor did O'Malley or Fire Chief Moore after the fire, or Deputy Fire Chief Rauscher at the time of the fire.

Scipione testified that when O'Malley turned on the gas on September 11, he did not "see him go behind the [living room] heater" or check "the piping behind the heater." He also testified that he did not see O'Malley "check the tightness of" the union which connected the gas pipe with the living room stove.

Fire Chief Moore testified that the charred area "was heaviest at the floor and went up . . . through the partitions and mushroomed in the attic." The lowest point of fire damage, he said, was on the floor in the living room behind the heater coming from the union. After the fire, he directed one of his deputies, Kenneth Rauscher, to unhook the living room stove from the gas pipe. Rauscher used a pair of steel pliers to do it, but found the joint "snuggly" hand tightened. It took "very little" pressure to loosen it. There was testimony from another deputy fire chief, also

a licensed gas fitter, that in connecting the parts of a union onto a pipe, "you tighten the nut of the union very securely."

1. The plaintiffs in their brief state that they do not contend that they "have directly and specifically proved the precise cause and history of the fire," and concede that the verdict for them "necessarily entailed some inference of [the company's] negligence, drawn from the evidence." It appears now to be established that evidence only of the occurrence of a break in a gas pipe and the escape of its contents does not warrant an inference of a gas company's negligence (on principles often referred to as res ipsa loquitur), *Musolino Lo Conte Co.* v. *Boston Consol. Gas. Co.*, 330 Mass. 161, 163 (1953), but there Chief Justice Qua pointed out that in a case which "disclosed any evidence beyond the bare facts of a break and escape of gas a quite different question would be presented." *Id.* at 165.

The evidence suggests the possibility that Scipione may have interfered with the union behind the living room stove, so as to loosen it, when installing the panel behind the stove after O'Malley had turned on the gas. We, however, must take the evidence (including Scipione's not very persuasive testimony) in its aspect most favorable to the plaintiffs. From that and other evidence, it could be found by the jury that the fire started at the low point of the charred wall near the union behind the living room stove and rose rapidly up the partition wall, that it had been ignited by the burning gas in the stove, that gas had accumulated behind the stove because the union was loose, and O'Malley (if Scipione's story was believed) had not checked that joint, despite his somewhat detailed testimonial description of the checks made by him. We think that these conclusions could have been reached by the jury on the evidence and "on the basis of their general knowledge of practical matters" without the aid of expert testimony. *Stewart* v. *Worcester Gas Light Co.*, 341 Mass. 425, 434 (1960). Compare the discussion of the need of expert testimony where more technical matters are concerned. *Id.* at 435. See also *D'Entremont* v. *Boston Consol. Gas Co.*, 320 Mass. 582, 583-584 (1947); *Wolff* v. *Buzzards Bay Gas Co.*, 353 Mass. 57, 58 (1967). The trial judge should not have ordered judgment notwithstanding the verdict.

2. The result which we reach makes it unnecessary to consider whether the trial judge improperly excluded the fire department's report to the State fire marshal.

3. The judgment is reversed and judgment is to be entered for the plaintiffs on the verdict.

*So ordered.*

*Eugene L. Rubin (C. A. Peairs* with him) for the plaintiffs.
*Mark S. Granger* for Boston Gas Company.