JOHN F. SHEA *vs.* GAS AND ELECTRIC DEPARTMENT OF HOLYOKE. March 4, 1986. *Negligence,* Electricity. *Res Ipsa Loquitur.*

John Shea sued the Gas and Electric Department of Holyoke, under the Massachusetts Tort Claims Act, G. L. c. 258, for injuries to his right arm, suffered as the result of an underground explosion in the vicinity of manhole No. 63 on High Street, Holyoke. The action was well tried before a judge of the Superior Court, sitting without a jury. He held for the plaintiff. His findings seem to us not only not erroneous but manifestly correct. We provide a short digest of the most material evidence.

High Street runs north and south. It is intersected by Suffolk Street, and, at a distance of perhaps 250 feet to the south, is met on its easterly side by Division Street. There is a manhole, No. 60 at the latter junction; No. 63 is about 100 feet north of No. 60 on High Street; and No. 64 is some 141 feet further north at the intersection of High and Suffolk Streets.

At 1:00 P.M., June 14, 1978, as Shea was crossing High Street from east to west near No. 63, he heard the sound of an explosion at that manhole; then came a second explosion that lifted the cover of the manhole and by its concussion threw Shea onto the sidewalk. Two other explosions occurred within a few minutes, one under the People's Savings Bank building at the southeast corner of the High-Suffolk Streets intersection that damaged the cellar and blew out windows on the first floor.

The evidence at trial focused on the 220-volt underground system of electrical cable extending north from No. 60, through No. 63, to No. 64. This system consisted of seven cables, each with thirty or more copper strands and each insulated by a skin of synthetic rubber. All seven cables were enclosed by four inch "orangeberg" pipe, a hardened substance containing a bitumen ingredient. The pipe was encased in a concrete block through which certain other electrical systems also passed. The 220-volt system could be directly observed only at the manholes where it emerged free of the concrete. "Limiters," serving like fuses, were normally placed at the

manholes which were located at street intersections or junctions (in this case at Nos. 60 and 64).

William E. Kelliher, the expert retained by the Gas and Electric Department to investigate the incident, was called by the plaintiff and gave candid testimony. He placed the malfunction about fifteen feet north of No. 63. At that point excessive current had raised a heat of 1,800 to 2,000 degrees Fahrenheit, sufficient to melt copper wires and fuse them into a mass, while exploding two limiters and melting two others at No. 64. The heat decomposed by pyrolysis the rubber insulation of the cables and the bitumen component of the orangeberg pipe. Combustible gases thus released migrated in the available paths and their ignition (presumably by the heat) set off the four explosions and generated dense smoke. Kelliher thought there had been the equivalent of a short circuit when the "neutral feeder" cable carrying current made physical contact with a "ground" cable in the system.

The evidence fell short of establishing the anterior, "original" cause of the malfunction, but from the evidence the judge could properly infer (although he might not be obliged to do so) that the casualty would not have occurred in the absence of negligence on the part of the defendant,[1] and that Shea's injury was traceable to that negligence. The judge relied on the Massachusetts doctrine of res ipsa loquitur (however, use of the Latin as a self-explanatory tag is not favored, see Nolan, Tort Law § 214 [1979]). Predicates for the application of the rule were at hand: electricity, a dangerous force, requiring correspondingly zealous care of handling;[2] this force and its tangible carriers in the exclusive control of the defendant; a total situation as described — not merely the fact of the explosions — amenable to the inference. For comparable cases where liability was found, see *St. Louis* v. *Bay State St. Ry.*, 216 Mass. 255, 257 (1913); *Burns* v. *Holyoke St. Ry.*, 253 Mass. 443, 445 (1925); *Gelinas* v. *New England Power Co.*, 359 Mass. 119, 123-125 (1971). See also Restatement (Second) of Torts § 328D comment c (1965). The case of *Musolino LoConte Co.* v. *Boston Consol. Gas Co.*, 330 Mass. 161 (1965), is not to the contrary, as appears from *id.* at 164-165, and *Yukna* v. *Boston Gas Co.*, 1 Mass. App. Ct. 62, 66 (1973).

*Judgment affirmed.*

*John E. Dahl* for the defendant.
*John F. Moriarty, Jr.,* for the plaintiff.

---

[1] It can be gathered from the record that, apart from observations at the manholes, there appears to have been no inspection of the cables — as by drawing them out of the concrete encasement — since the time of the installation of the system perhaps twenty-five years before the accident. See *Leavitt* v. *Glick Realty Corp.*, 362 Mass. 370, 376 (1972).

[2] See *Rasmussen* v. *Fitchburg Gas & Elec. Light Co.*, 343 Mass. 515, 517 (1962); *Gelinas* v. *New England Power Co.*, 359 Mass. 119, 124 (1971).