MARSHA GLEASON & others[1] vs. SOURCE PERRIER, S.A., & others.[2]

No. 88-P-16.

Middlesex. February 15, 1989. - May 2, 1990.

Present: ARMSTRONG, BROWN, & KASS, JJ.

*Negligence*, Bottled water. *Practice, Civil*, New trial, Judicial discretion, Deposition, Interrogatories, Comment by judge. *Evidence*, Expert opinion, Admissions and confessions, Bias. *Witness*, Expert. *Agency*, Admission by agent. *Words*, "Managing agent."

After judgment had been entered for the defendants in a civil action, the judge did not abuse his discretion in denying the plaintiffs' motion for a new trial based on the contention that special jury verdicts unfavorable to the plaintiffs' cause were against the weight of the credible evidence. [563-565]

At the trial of an action seeking damages for personal injuries, the judge's exclusion of certain testimony of the plaintiffs' medical expert on the ground that the expert witness's answers would touch upon the ultimate issue, even if error, was harmless in the circumstances of the case. [565-567]

At the trial of an action seeking damages for an injury sustained to a plaintiff's right eye when a bottle of carbonated water exploded after she had taken it from a shelf in a store and placed it in a metal shopping cart, the judge did not err in excluding an allegedly overfilled bottle of carbonated water manufactured by the defendant, offered by one of plaintiffs' expert witnesses in an effort to support the theory that the bottle in the store had exploded spontaneously as a result of a combination of factors, including overfilling, where the relevance of the allegedly overfilled bottle was questionable. [567-568]

At the trial of an action seeking damages for an injury sustained in a store when a bottle of carbonated water exploded after a plaintiff placed it in a metal shopping cart, the judge did not err in ruling that the deposition testimony of the store's manager was not binding on the store's corporate owner under Mass.R.Civ.P. 32 (a) (2), where the witness's

---

[1]Marsha's husband, Robert Gleason, also brought this action individually and on behalf of the Gleason's two minor children, Noah and Erik Gleason.

[2]Great Waters of France, Inc. (Great Waters), a distributor, and Post Road Liquors, Inc. (Post Road), a retailer. Source Perrier (Perrier) is a French bottler.

title of "store manager" did not make him a "managing agent" of the corporation for purposes of the rule, and where the witness had not been designated a deponent under Mass.R.Civ.P. 30 (b) (6). [568-569]

The record of a civil trial gave no support to the plaintiffs' contention that inconsistencies existed between certain depositions and answers to interrogatories by a defendant and its employee, and certain trial testimony given by the employee. [569-571]

Nothing contained in isolated remarks and comments by the judge during the extremely long trial of a civil action prejudiced the plaintiffs' case so as to warrant a new trial. [571-572]

CIVIL ACTION commenced in the Superior Court Department on June 9, 1980.

The case was tried before *Walter E. Steele*, J., and a motion for a new trial was heard by him.

*Anil Madan* for the plaintiffs.

*Stephen A. Moore* (*Kim V. Marrkand* with him) for Post Road Liquors, Inc.

*Philip E. Murray, Jr.*, for Source Perrier, S.A., & another.

BROWN, J. At the center of this case is a bottle of Perrier brand carbonated water, the premier brand of the currently fashionable "designer" water[3] beverage industry. In this action seeking damages for personal injuries, loss of consortium, and emotional distress,[4] the plaintiffs claimed that as a result of an incident which occurred on the premises of Post Road, Marsha Gleason sustained an irreparable injury to her right eye when a twenty-three ounce bottle of Perrier carbonated water[5] exploded after she had placed it in a metal shopping cart. The plaintiffs claimed that the bottle had defects which worked together in the metal cart to cause a spontaneous explosion as Marsha was looking up at, and conversing

---

[3]T. Wolfe, Bonfire of the Vanities 258 (1987).

[4]Other claims which were voluntarily dismissed or upon which verdicts were directed for the defendants, and a third-party claim against another distributor, are not part of this appeal.

[5]During the bottling process the natural carbonation in Perrier water is, in the words of a vice president of Great Waters, "reinforced with the spring's own carbonation to bring it up to the historical [carbonation] level found in the spring."

with, the store manager. The defendants, on the other hand, contended that the bottle broke after some act or acts of the plaintiffs caused it to be dropped out of the cart to the floor. The defendants' theory was that Marsha looked down and was struck by a flying fragment of glass after the bottle hit the floor. Following unfavorable special jury verdicts on all counts alleging negligence and breach of implied warranty of merchantability and fitness, the plaintiffs appealed from the ensuing adverse judgment.

It is impossible to traverse the many volumes of transcript in this case without becoming acutely aware that Marsha Gleason has endured tremendous pain and suffering as a result of the tragic and irreparable eye injury she received. Nevertheless, after a careful review of the record and of the many claims of error,[6] we conclude that no error was committed that would call for reversal.

1. *Motion for a new trial.* The plaintiffs' principal contention on appeal is that the trial judge erred in denying their motion for a new trial which was premised on the ground that the verdicts were against the weight of the credible evidence. Such a ruling rests in the sound discretion of the trial judge. *Adams* v. *United States Steel Corp.*, 24 Mass. App. Ct. 102, 103-104 (1987). See also *Solimene* v. *B. Grauel & Co., KG*, 399 Mass. 790, 802 (1987); *Kaltsas* v. *Duralite Co.*, 4 Mass. App. Ct. 634, 639 (1976). The verdict may be set aside "only if [the judge] is satisfied that the jury have failed to exercise an honest and reasonable judgment in accordance with the controlling principles of law." *Hartmann* v. *Boston Herald-Traveler Corp.*, 323 Mass. 56, 60 (1948). Even if the jury's verdict was a surprise, if it is supported by what the judge concludes to be credible evidence, then it should stand. See *Kuhlmann* v. *Hy-Crest Ranches, Inc.*, 4 Mass. App. Ct. 542, 546 (1976).

The central question before the jury was what caused the bottle to rupture.[7] Neither the manager of Post Road, Wil-

---

[6] The doctrine of res ipsa loquitur was not raised.

[7] Considerable time and effort were expended reconstructing the bottle from the numerous fragments in order to determine the point of fracture

liam McDermott, nor the accident victim, Marsha Gleason (the only percipient witnesses other than Marsha's eighteen month old baby Erik) was able to state with certainty how the accident actually occurred. McDermott claimed that while he was speaking with Marsha about wine, he "believe[d]" he saw Erik, who was seated in a child seat in the shopping cart, handling the Perrier bottle in the cart. At some point during the conversation, the bottle ruptured. McDermott did admit that he did not know where the baby's hands were just prior to the accident and that he never actually saw the baby pick up or drop the bottle. He testified that a bottle went over the cart to the floor and a stream of foam came up, hitting Marsha in the eye as she looked down at the floor. Glass then fell from her eye. According to McDermott, closely following the incident, Marsha stated that "her baby dropped the bottle." A customer, the store cashier, and an emergency medical technician also testified that, immediately following the injury, Marsha stated that her baby had dropped the bottle.[8]

Marsha, in effect, denied that Erik picked up or in any way caused the bottle to fall or break. She recalled stopping to ask McDermott a question about wine. She testified, however, that "[a]t that point my baby Erik started to reach his hand behind him, like he was trying to reach one of the bottles [in the cart] behind him, so I, you know, tightened my grasp on him and I pushed the bottle that was nearest to him farther back and I said, 'Erik, sit still,' or something to that effect." She went on to testify that, while conversing with McDermott and looking at him, "I heard a noise . . . and I saw — I had a sensation of a flash of green. I couldn't tell

---

as well as the precise amount of internal pressure in the bottle when it ruptured.

[8]Robert Campana, the other emergency medical technician who responded to the scene within minutes, stated in his deposition testimony, which was read in evidence: "I asked [Marsha Gleason] what happened, and she told me her daughter dropped the bottle of Perrier or something, dropped it out of the cart and it blew up and the glass hit her in the eye." The plaintiffs argue that Campana's account is unreliable since Marsha does not have a daughter. What weight to attribute to Campana's deposition testimony was for the jury to decide.

you which one came first. It was simultaneous. It was a split second. I didn't even have a chance to blink and I felt the impact in my eye." On cross-examination Marsha admitted that the flash of green could have been the bottle going over the side of the cart. She also admitted that Erik was able to throw some things at his age and that she had to keep him from grabbing hold of things in the shopping cart.

Favorable to the plaintiffs, there was considerable evidence tending to show that Perrier used poor manufacturing practices, e.g., failing to test glass wall thickness of its bottles, and that Perrier and Great Waters were aware of such problems and of other alleged defects in the bottles and in the bottling process, such as excessively high internal pressure in the bottles caused by overfilling and excess head space air.[9] There also was evidence that several instances of exploding bottles had been reported to Great Waters. Contrary to the plaintiffs' contention, however, the evidence did not establish overwhelmingly that the bottle in this case was defective.[10] On conflicting evidence, the jury made a determination between plausible alternatives. Their conclusions were not necessarily contrary to the laws of physics and nature, as the plaintiffs maintain. As the verdicts were not unreasonable or outweighed by the credible evidence, the trial judge did not abuse his discretion in denying the plaintiffs' motion for a new trial.

2. *Exclusion of evidence.*

(a) The plaintiffs claim that the trial judge erroneously excluded certain testimony of their medical expert, Dr. Deborah Langston, an ophthalmic surgeon with substantial experience in treating severe eye trauma. The judge considered her to be a well qualified medical expert. She was al-

---

[9]The plaintiffs also attempted to show that the ruptured bottle's strength had been weakened by surface abrasions which came about when the bottle was placed in contact with the metal shopping cart.

[10]For example, there was testimony by the plaintiffs' expert, Dr. Caporali, and other evidence that the bottle was stronger than the average. Dr. Caporali stated that he did not find any serious scratching on the surface of the bottle which would cause the bottle to explode spontaneously under ordinary internal pressure.

lowed to testify extensively on numerous aspects of Marsha's injury and treatment, including the horizontal angle of the laceration to Marsha's eye.[11] The plaintiffs' counsel then posed a series of questions to the doctor, hypothetical and otherwise, four of which were excluded by the trial judge.[12] In substance, the four excluded questions, which are set out in the appendix, called for a medical opinion concerning the precise nature of Marsha's injury. Following the exclusion of the first question, there was a side bar conference at which the judge indicated his grounds for exclusion as follows:

> "[Judge]: If she were a pathologist in a homicide case, I would allow it, but my problem is this. That she has been given full rein, I think by me, in her specialty. . . . She could be found a person well versed in her field. This comes too close to the question, however[,] of liability, and I don't like a question of liability put to a medical expert in a hypothetical."

The judge excluded the remaining three questions apparently on the same ground. This was error. "A witness can be found qualified to express an opinion concerning some matters but

---

[11]There was testimony that when a bottle breaks, the pieces of glass travel in a parabola or curve, and at its peak a piece of glass shot from a bottle travels horizontally. There was also testimony that the laceration was horizontal across the surface of Marsha's eye, tending to indicate that the glass struck Marsha at the peak of its arc.

[12]With the assent of the court and to best accommodate witnesses' schedules, several witnesses, including certain experts, testified out of anticipated order. This necessitated that some of the experts testify at length based on extensive hypotheticals concerning matters on which there was yet to be direct testimony.

While it is clear that the scope and fullness of hypothetical questions are within the discretion of the trial judge, see *Cohen* v. *Maritime Transp. Co.*, 353 Mass. 760, 761 (1968); *LaClair* v. *Silberline Mfg. Co.*, 379 Mass. 21, 32 (1979), we believe that the judge's comments at side bar, discussed further below, indicate another rationale for exclusion beyond the form of the question. Further, "[t]he matter is not one solely of reviewing the judge's exercise of discretion, when the judge wholly excludes expert testimony because of serious misunderstanding of the issues of fact upon which such expert testimony is offered or because of failure to perceive the relevance of the offered testimony." *Commonwealth* v. *Banuchi*, 335 Mass. 649, 655 (1957).

not concerning other related matters." *Power Serv. Supply, Inc.* v. *E.W. Wiggins Airways, Inc.*, 9 Mass. App. Ct. 122, 130 (1980). However, an expert witness may testify on matters within his field of expertise even if his opinion touches on the ultimate issue for the jury. See, e.g., *Simon* v. *Solomon*, 385 Mass. 91, 105 (1982). Although the judge based his ruling primarily on the ground that the witness's answers would touch upon the ultimate issue, any error was harmless in the circumstances of this case. Both Dr. Langston and Marsha's immediately treating physician, Dr. Kaufman, were permitted to testify that the shard of glass which struck Marsha's eye was likely to have come from somewhere between her head and her waist. This evidence supported the plaintiffs' theory that the bottle had exploded spontaneously and not as a result of being dropped on the floor. Moreover, the judge was not required to allow the plaintiffs' expert to testify as to the direction of Marsha's gaze regardless of any assumption about the direction from which the shard of glass entered her eye. The offer of proof provided no intelligible basis on which Dr. Langston could have formed an opinion involving two unknowns.

(b) In an effort to support the theory that the Perrier bottle had exploded spontaneously in the shopping cart as a result of a combination of factors, including overfilling, one of the plaintiffs' expert witnesses produced a bottle of Perrier water that allegedly was overfilled.[13] The judge did not err in excluding that bottle from evidence. As the relevance of the allegedly overfilled bottle[14] was seriously questionable, the

---

[13]There was no direct evidence that the bottle involved in the accident was actually overfilled. We also note that, contrary to the expert's statement that there was no difference between his bottle and the accident bottle, there was at least the difference that the closures of the bottles were not alike.

[14]According to the plaintiffs, introducing the bottle was an attempt to refute Perrier's claim that it was impossible to produce an overfilled bottle in its manufacturing process, as well as to show poor quality control practices of Perrier. Although there was evidence at trial that Perrier may have had a poor quality control system, the portion of the record cited by the plaintiffs does not show that Perrier made any express claim that overfilling was an impossibility. In fact, it was the plaintiffs (at side bar) who

judge was well within his discretion in excluding it. Cf. *Lic, Inc.* v. *Hudson,* 10 Mass. App. Ct. 815, 816 (1980) (judge has wide discretion in determining whether evidence is sufficiently similar to assist the jury).

3. *Effect of McDermott's earlier statements.* The plaintiffs maintain that the judge made a critically prejudicial error when he ruled that the deposition testimony of William Mc-Dermott, the store manager of Post Road, was not binding on the corporation under Mass.R.Civ.P. 32 (a) (2), 365 Mass. 787 (1974). We do not agree.[15]

"The law concerning who may properly be designated as a managing agent is sketchy. Largely because of the vast variety of factual circumstances to which the concept must be applied, the standard, like so many others in the law, remains a functional one to be determined largely on a case-by-case basis." *Founding Church of Scientology of Washington, D.C., Inc.* v. *Webster,* 802 F.2d 1448, 1452 (D.C. Cir. 1986). See *Independent Prods. Corp.* v. *Loew's, Inc.,* 24 F.R.D. 19, 24-25 (S.D.N.Y. 1959). See also *Petition of Manor Inv. Co.,* 43 F.R.D. 299, 300-301 (S.D.N.Y. 1967), wherein it was stated:

> "The test as to whether one serves in such capacity to a party so that the party may be deposed through him as a managing agent under the Rule is not the title of office, or even the lack of title, but the functions he performs in furthering its activities and interests. If he has general powers to exercise his judgment and discretion in dealing with corporate matters, he may be deemed a 'managing agent.' In each instance a realistic appraisal

made that claim. Insofar as the allegedly overfilled bottle was introduced to show poor quality control practices of Perrier, such evidence would have been cumulative.

[15]Nor do we think that Post Road's failure to object to the "Notice of Taking Deposition of Defendant Post Road Liquors, Inc. by and through William McDermott, Manager" bars it from raising an objection at trial. See in this regard, *Kolb* v. *A. H. Bull S.S. Co.,* 31 F.R.D. 252, 253-255 (E.D.N.Y. 1962). The parties have not raised the question whether McDermott should have been subpoenaed in connection with his deposition, and we do not discuss it.

of his activities determines the true nature of his relationship to the corporation."

A managing agent " 'does not act "in an inferior capacity" under close supervision or direction of "superior authority." ' " *Independent, supra* at 25-26 (citation omitted). An employee in a supervisory position who merely performs general day-to-day maintenance or routine functions, even if on a wide scale, does not possess the type of " 'general powers to exercise his judgment and discretion in dealing with corporate matters.' " *Colonial Capital Co. v. General Motors Corp.*, 29 F.R.D. 514, 516-517 (D.Conn. 1961) (citation omitted).

At trial the plaintiffs presented little evidence to prove McDermott was a "managing agent." They did show that he was the day manager of the store and was in charge when John Recco, the president of Post Road, was not there. McDermott was also in charge of all buying, pricing, and scheduling. However, it is plain from the record that McDermott answered to the immediate authority of Recco.[16] McDermott's job title of "store manager," does not make him a "managing agent" for purposes of the rule. As it reasonably could be determined that McDermott was not a "managing agent" of Post Road and that he had not been designated by Post Road under Mass.R.Civ.P. 30(b)(6), the trial judge correctly ruled that his deposition could not bind the corporation. See *G.T.E. Prod. Corp.* v. *Gee*, 115 F.R.D. 67, 69 (D. Mass. 1987).

The plaintiffs also attempt to show inconsistencies in McDermott's deposition testimony, as well as certain of Post Road's answers to interrogatories alleged to have been supplied by McDermott, and his trial testimony regarding whether Marsha was looking up or down at the time of the injury and regarding the condition of the bottle as it went

---

[16]Further support for this determination is evidenced by the fact that McDermott presented information to Recco to be used for answers to interrogatories and that it was Recco who turned over the incident bottle to Marsha's husband because McDermott apparently lacked the authority to do so on his own.

over the side of the shopping cart. A careful reading of the
portions of the record to which the plaintiffs have directed us
does not bear them out.

Post Road, in its answers to interrogatories, stated that af-
ter the bottle "dropped to the floor and broke, Mr. McDer-
mott observed the Perrier water and a piece of glass enter
Mrs. Gleason's eye. Mrs. Gleason then leaned over and the
piece of glass dropped out of her eye and onto the floor." At
his deposition McDermott confirmed the accuracy of the an-
swer and testified that he saw the liquid contents hit Mar-
sha's eye when the contents "came up like a steady stream of
foam . . . and [he] just followed it right up." McDermott's
trial testimony was that he did not see the glass itself enter
Marsha's eye, but that he "observed the bottle of Perrier
water come over the top of the carriage and land[] on the
floor . . . then noticed the liquid going up like a stream,
right up to her eye, and then . . . noticed a piece of glass
fall out of her eye." He testified that Marsha had been
"standing up looking at [him] talking" before the accident
and that he had been looking at her. When the bottle moved,
he turned his attention to it, watching it descend and break,
and the liquid travel up. Although McDermott testified that
he did not actually see her look down, bend her head, or lean
over, he had "no doubt" that, at the point when he saw the
liquid strike her eye, Marsha was looking down at the floor.

Post Road's answers to interrogatories also contained the
statement that McDermott "believe[d] that the Gleason
baby . . . had his hand on the bottle of Perrier water. . . .
[A]t the next moment the bottle . . . dropped from the
shopping cart onto the floor." At his deposition, McDermott
stated that this answer was truthful, and that he "probably
shouldn't have" used the term "playing" with some bottles in
the cart earlier in his deposition testimony. "The baby had
his hands on the bottle." At trial, McDermott testified that
his "memory today [was he] believe[d] the baby had his
hands on the Perrier water and maybe other bottles playing
with the bottles. . . . Now I can use [the term 'playing']."
He also testified that he did not remember the position of

Erik's hands at the time the bottle fell. As we have noted above, it was undisputed that he had not seen Erik drop the bottle from the cart.

Finally, at his deposition McDermott testified that he saw "three-quarters of the bottle [as it began its descent from the cart]. I don't know if I saw the whole bottle plus [the] cap and everything." Later in the deposition McDermott testified that he "thought," was "pretty sure," was "sure," and "believe[d]" he saw the whole bottle come out of the shopping cart. At trial, McDermott testified that during the bottle's descent he could see only about three-quarters of it at any given point in time, and that there was "[n]o question" that he saw an intact bottle descend to the floor.

Finding no material inconsistency between the foregoing pretrial statements, which were introduced at trial, and McDermott's trial testimony, we have no occasion to discuss whether any of the complained of statements should have been deemed vicarious admissions. Cf. *Ruszcyk* v. *Secretary of Pub. Safety*, 401 Mass. 418 (1988), decided after the trial in this case. Consequently, any error in the judge's instructions limiting the jury's consideration of the statements would be harmless in any event.

4. *Prejudicial remarks by the judge.* The plaintiffs also argue that the trial judge made numerous remarks and comments in the presence of the jury which prejudiced their case and warrant a new trial. However, the plaintiffs' counsel falls well short of making out "repeated and combative interruptions," supposed "insensitivity" toward the possible effect of his demeanor, or any other egregious behavior on the part of the trial judge. The plaintiffs' claim is based primarily on three[17] isolated instances in the course of an extremely long trial. There is no hint here of the type of conduct shown in

---

[17]No objections were taken in two of the instances, and the record is, at best, unclear as to whether the third had been preserved on appeal. Moreover, the force of this third claim is greatly diminished because the record indicates that the challenged comment was made at side bar, and not within the hearing of the jury, as the plaintiffs allege.

the cases cited by the plaintiffs.[18] Neither the three instances complained of nor any other conduct warrants a conclusion that the effect of the judge's "remarks may have been 'to throw the weight of [his] opinion in the scales against the [plaintiffs].' " *Gauntlett* v. *Medical Parameters, Inc.*, 10 Mass. App. Ct. 88, 94 (1980), quoting from *Commonwealth* v. *Foran*, 110 Mass. 179, 180 (1872). See also *Olson* v. *Ela*, 8 Mass. App. Ct. 165, 167-169 (1979). In any event, considering the plaintiffs' selective fragmentary references in the record, we think that "the judge's instructions to the jury tended to ameliorate any adverse effect that his remarks may have had on the jury." *Commonwealth* v. *Fitzgerald*, 380 Mass. 840, 847 (1980).

5. *Instructions.* The plaintiffs also attack certain aspects of the judge's instructions. The major thrust of their complaints in this regard goes to the instructions concerning breach of warranty with respect to the shopping cart and the premises of Post Road. The instructions given correctly stated the law.[19]

6. *Other matters.* We have considered the plaintiffs' remaining claims and conclude they are without merit. No further discussion is warranted.[20]

*Judgment affirmed.*

*Order denying motion for a new trial affirmed.*

---

[18]As noted by Post Road, "[a]ny attempt to read prejudice into this [issue] borders upon the frivolous and [must be] viewed only as an attempt to reach for anything which might reverse an unfavorable jury verdict."

[19]In the one instance where the judge may have made a misstatement in his instructions on warranty, the record reflects that the judge, after a colloquy at side bar, clarified the point by correctly restating the law (before the jury retired) in a manner substantially in accord with the plaintiffs' request.

[20]In particular, as to any theory of liability based upon the bottle being defective and breaking on the floor, see Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

APPENDIX.

[*Question One*]
"Q. [by plaintiffs' counsel:] Dr. Langston, assume that Mrs. Gleason was at a liquor store known as Post Road Liquors on August 25, 1978. And assume that she was using a shopping cart of this type (indicating), in which were placed two six-packs of beer, two bottles of wine, the regular size, and a bottle of Perrier water, and also a one-and-a-half liter jug of wine as I have shown. Assume that she had an eighteen-month-old baby in the carriage in the baby seat provided by the store. And assume that a gentleman named William McDermott, who was the store manager, stated that Mrs. Gleason was standing on the left side of the cart in approximately the location that I am showing you, and that he was standing in front of her, also on the left side of the cart, within inches of the cart, looking at Mrs. Gleason. Assume further that he testified that she was looking at him, and assume that he testified that he saw a portion of a green bottle or three-quarters of a green bottle going over the back side of the cart in the location which I am showing you near the baby's seat (indicating). And that it fell to the floor and that he saw a steady stream of foam coming up from the floor and hitting Mrs. Gleason in her eye and that when she looked down, a piece of glass fell out."

"[Counsel for defendant Post Road]: Objection."

"Q. [Plaintiffs' counsel continues:] Do you have an opinion with a reasonable degree of medical certainty as to whether the laceration in Mrs. Gleason's eye could possibly have been caused by that scenario as I've depicted?"

[Judge sustains defendant's objections]

. . .

[*Question Two*]
"Q. [Plaintiffs' counsel]: Now, Dr. Langston, I'd like you to assume [ . . . counsel reiterates substantially the same facts as in question one and continues . . .] She had a baby and that the baby was in the baby seat, that Mrs. Gleason was standing on the side of the cart or the back of the cart where the handle to push the cart is, and that she had her left hip touching the cart and was at an angle to the cart, facing a gentleman who was six foot one inches tall, and assume that she suffered the injury which you have described and seen. Do you have an opinion with reasonable medical certainty as to where the piece of glass most probably originated under those conditions?"

[Defendants Perrier and Post Road object.]

[Judge sustains the objections.]

. . .

[*Question Three*]
"Q. [Plaintiffs' counsel]: Dr. Langston, assume that Mrs. Gleason suffered the injury which you have seen and which has been described and assume that she was standing by her shopping cart as I've described and looking

up at a person who is six foot one inches tall. Based upon the nature of the cut to her eye and the angle of entry, do you have an opinion with reasonable medical certainty as to whether or not Mrs. Gleason's gaze was directed downwards at the time of her injury?"

[Defendants Perrier and Post Road object.]

[Judge sustains the objections.]

. . .

*[Question Four]*

"Q. [Plaintiffs' counsel]: Dr. Langston, based upon the nature of the cut to Mrs. Gleason's eye and the point of entry, do you have an opinion with reasonable medical certainty, that is, are you able as an ophthalmic surgeon to tell what the position of the eye would have been at the time of the injury?"

[Defendants Perrier and Post Road object.]

[Judge sustains the objections.]