Doerfer, J.
Plaintiffs, Gerald F. Spitz (“Spitz”) and Edward F. O’Reilly (“O’Reilly”), brought an action in negligence against the Boston Edison Company (“Edison”) to recover for personal injuries suffered while fighting a fire allegedly caused by a defective split fibre main. The jury returned a verdict for the plaintiffs. Edison has now moved for a judgment notwithstanding the verdict or, in the alternative, a new trial. For the reasons set forth below, the defendant’s motions are denied.
BACKGROUND
On January 31, 1991, Spitz and O’Reilly, firefighters for the City of Boston, responded to a fire on 51 Gates Street in South Boston. During the course of fighting the fire, Spitz and O’Reilly sustained personal injuries. Spitz and O’Reilly brought an action in negligence against Edison claiming that Edison was negligent in maintaining the “split fibre main” cable in the ground on Gates Street. Plaintiffs argued that Edison’s failure to replace the cable resulted in a system “short” and, consequently, the fire which proximately caused the plaintiffs’ injuries. Edison vigorously contested the plaintiffs’ theory and introduced evidence at trial from its experts tending to show that the fire was not caused by a “fault” or short circuit in the street, but started from other causes in the house.
After a six-day trial, the jury returned a verdict for the plaintiffs. The jury granted a damage award of $230,000.00 to Spitz and $12,000.00 to O’Reilly. Edison now moves for a judgment n.o.v. or, in the alternative, a new trial, on the grounds that: (1) the evidence was not sufficient as a matter of law to warrant a verdict for the plaintiffs: (2) the verdict is against the great weight of the evidence: and (3) the Court failed to give a necessary instruction to the jury.
DISCUSSION
The test for granting a motion for judgment n.o.v. is the same as that for granting a directed verdict. Miga v. Holyoke, 398 Mass. 343, 348 (1986); see Toubiana v. Priestly, 402 Mass. 84, 85 (1988); International Totalizing Sys., Inc. v. Pepsi Co., Inc., 29 Mass.App.Ct. 424, 429-30, rev. denied, 408 Mass. 1105 (1990). As with motions for directed verdict, conflicting evidence alone does not justify judgment n.o.v. Tosti v. Ayik, 394 Mass. 482, 494 (1985), appeal after remand, 400 Mass. 224 (1987), cert. denied 484 U.S. 964 (1987). ”[I]t is of no avail for the defendant to argue that there was some or even much evidence which would have warranted a contrary finding by the jury.” Curtiss-Wright Corp. v. Edel-Brown Tool & Die Co., 381 Mass. 1, 4 (1980), quoting Chase v. Roy, 363 Mass. 402, 407 (1973). In reviewing the sufficiency of the evidence the court looks to see whether anywhere in the evidence, from whatever source derived, any combination of circumstances can be found from which a reasonable inference can be drawn in favor of the plaintiff. Poirier v. Plymouth, 374 Mass. 206, 212 (1978); Blais-Porter v. Simboli, 402 Mass. 269, 274 (1988); Thurston v. Ballou, 23 Mass.App.Ct. 737, 741 n.6 (1987).
Mass.R.Civ.P. 59(a)(1) allows ajudge to grant a new trial “for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the Commonwealth.” Mass.R.Civ.P. 59(a)(1); see also Galvin v. Welsh Manufacturing Co., 382 Mass. 340, 342 (1981). However, ajudge should not order a new trial unless “the failure to do so appears to the [trial] court inconsistent with substantial justice.” Galvin v. Welsh Manufacturing Co., supra at 343.
Edison argues that the verdict for the plaintiffs is insufficient as a matter of law and against the great weight of the evidence. The judge should set aside a verdict “only if he is satisfied that the jury failed to exercise an honest and reasonable judgment in accordance with the controlling principles of law.” Bolton v. Massachusetts Bay Transportation Authority, 32 Mass.App.Ct. 654, 658 (1992), quoting Hartmann v. Boston Herald-Traveler Corp., 323 Mass. 36, 60 (1948); Gleason v. Source Perrier, S.A., 28 Mass.App.Ct. 561, 563 (1990).
Edison acknowledges the high duty of care placed on persons transmitting electricity. Rathburn v. Western Massachusetts Electric Co., 395 Mass. 361, 363 (1985), citing Gelinas v. New England Power Co., 359 Mass. 119, 124 (1971). Edison contends, however, that the plaintiffs failed to prove that Edison breached its duty, because the plaintiffs did not introduce evidence that Edison had notice of any defects in the split fibre main on Gates Street nor that a “reasonable utility company” would have acted differently in like circumstances. Edison takes particular issue with the plaintiffs’ failure to prove that Edison deviated from any industry standards regarding the use, maintenance, or inspection of such cable.
I.
The evidence showed that the split fibre main cable is essentially three wires laid in a split fibre conduit and encased in a liquid dielectric material which hardens soon after it is applied. This material keeps the wires apart and protects them from moisture. If the material deteriorates and cracks, water can seep in which can cause a short circuit between the wires. The split fibre main was installed fifty to seventy years ago and is still in use in substantial sections of Boston.
Plaintiffs expert, Duncan Glover (“Glover”), testified in substance that the dielectric material is subject to deterioration over time which can lead it to crack and permit moisture to seep in and cause short circuits. Short circuits, in turn, can cause excessive voltages in a home, which can cause fires, according to Glover.
Plaintiffs produced further evidence that Edison had experienced numerous problems with its cable, including arcing faults and short circuits, which *560 caused power outages during the winter.[1] Glover concluded that Edison should have replaced the split fibre main and replaced it with cable in conduit.[2] There was no evidence, however, of any fires starting as a result of these arcing faults and short circuits.
Edison asserts that Glover’s testimony was “not credible” because it was not supported by any facts of industry standard or custom. (Edison Memo. p. 4.) In fact, plaintiffs did not present any evidence that Edison deviated from any industry standard in retaining seventy-year-old split fibre mains. Edison contends that plaintiffs therefore failed to establish that Edison breached its duty of care, and the jury could not properly find negligence.
The court shall not weigh Glover’s credibility. “The question of the credibility of an expert is for the jury, not for the judge.” Simmons v. Monarch Machine Tools Co., Inc., 413 Mass. 205, 213 (1992). Edison had ample opportunity both to cross-examine Glover as to the basis of his conclusions and to present its own experts regarding the feasibility of replacing the split fibre mains and the probability that aged cables would cause a fire. Glover’s failure to cite to a different utility company policy does not render his testimony objectionable, but rather simply goes to the weight of the evidence.
Further, Edison’s compliance with industry standards does not conclusively establish that Edison did not breach its high duty of care. The fact that a “certain device or practice is in common use tends to show that its use is not negligent.” Corthell v. Great Atlantic & Pacific Tea Co., 291 Mass. 242, 243 (1932) (citations omitted). However, conformance with industry standards is never conclusive proof of due care because “a whole calling may have lagged in the adoption of new and available devices.” T.J. Hooper v. Northern Barge Corp., 60 F.2d 737, 739 (2nd Cir. 1932). While “evidence of industry standards may be relevant and useful, it is not essential and, in any event, is not conclusive." Pignone v. Santa Anita Manufacturing Corp., 17 Mass.App.Ct. 944, 945 (1983); see Torre v. Harris Seybold Co., 9 Mass.App.Ct. 660, 671-73 (1980). Thus, the jury could find that the entire electrical industry had a duty to replace older split fibre mains, and Edison’s failure to replace the mains was one example of an industry-wide breach.
Edison argues that a power company is only required to exercise the degree of care that is commensurate with the risk and, because the split fibre main cables had never caused a fire before, Edison’s duty of care could not require replacing the entire main system. Edison relies on Gelinas v. New England Power Co., supra, for its “risk-duty” analysis. The Gelinas court actually cites Clough v. New England Telephone & Telegraph Co., 342 Mass. 31 (1961), for the proposition that an electric company is “held to exercise care that is commensurate with the risk.” Clough, supra at 35. In Clough, members of a construction crew sustained injuries when their crane struck a high voltage wire. The court held that the electric company had no duty to warn the experienced crew of the danger of electrical shock, because the hazard was open and obvious, and the accident was primarily caused by the “imprudence” of the crew. Id. at 35. In this case, the jury could reasonably find that Edison had exclusive knowledge of the age and condition of the cables and exclusive authority to replace or upgrade the system.
Edison further asserts that plaintiffs failed to introduce any evidence that the risk of fire on Gates Street was foreseeable, because the Gates Street cable never experienced a fault which would indicate a defect. “The question of whether a risk is reasonably foreseeable is almost always a question for the jury.” Simmons v. Monarch Machine Tools Co., Inc., 413 Mass. 205, 211 (1992); Fahey v. Rockwell Graphic Sys., Inc., 20 Mass.App.Ct. 642, 648-49 (1985). The plaintiffs did present evidence that Edison had experienced numerous problems including faults and short circuits, which Glover identified as indications of deterioration. Furthermore, the courts have held utility companies and other defendants, involved in the supply of electricity, liable for spontaneous malfunctions which occurred without warning. See Shea v. Gas & Electric Department of Holyoke, 21 Mass.App.Ct. 970 (1986) (defendant held liable when manhole exploded, even though plaintiff could not pinpoint the original malfunction or show explosion was foreseeable); Leavitt v. Glick Realty Corp., 285 N.E.2d 186 (1972) (landlord held liable for failing to inspect wiring for 27 years even though no prior problems); Gelinas v. New England Power Co., supra (power company held to duty to inspect 27-32-year-old wires which released an electric current into the plaintiffs construction machine); Stewart v. Worcester Gas Light Co., 341 Mass. 425 (1960) (gas company held liable for failing to maintain service pipes after workers struck pipe with power hoe and caused explosion). Courts consistently find that electricity is a dangerous force, “requiring correspondingly zealous care of handling.” Shea, supra at 970. The jury could rationally find that the short circuits and faults indicated a general deterioration in the electrical main system, and that a fire is a foreseeable result of wire degeneration.
The jury heard evidence that Edison had a program to replace the split fibre main. They also could conclude that, although non-destructive inspection was impractical, it was unreasonable for Edison to retain their system, given the known risk of faults and short circuits. Edison had the opportunity to introduce more evidence on the cost or impracticability of replacing the system, but chose not to. The jury was left with the opinion of the plaintiffs’ expert and with evidence that Edison had notice that its split fibre main system was shorting out. They were justified in concluding that defendant failed to exercise due care by failing to replace a distribution system in recognition of its hazardous nature.
*561 As a final point, Edison urges the court to compare this case with Musolino LoConte Co. v. Boston Consolidated Gas Co., 330 Mass. 161 (1953), and Elgin Airport Inn, Inc. v. Commonwealth Edison Co., 432 N.E.2d 259 (Ill. 1982). In each case, the respective courts found the defendant not liable for injuries caused by abnormal utility activity. Both cases are distinguishable from the instant case.
In Musolino LoConte Co., the plaintiff, a macaroni manufacturer, sued the gas company when a quantity of macaroni became chilled because the manufacturer was forced to open the windows when gas escaped from the street main into the plaintiffs factory. The court noted that there was no evidence of defendant’s negligence beyond the crack in the main laid, and the plaintiffs did not establish how or why the pipe had cracked. The court stated, “(i]t is hardly necessary to emphasize that if the case disclosed any evidence beyond the bare facts of a break and escape of gas quite a different question would be presented.” Musolino LoConte Co., supra at 165. In the instant case, the plaintiffs’ claim is far less tenuous and the plaintiffs presented expert testimony as to both the cause of the fire and the way in which it may have been prevented.
In Elgin Airport Inn, Inc., the court held Commonwealth Edison was not liable for damage to the Inn’s air conditioning system when an abnormal current surged through the units. The court explained that because the user could take precautions against abnormalities in Commonwealth Edison’s “three-phase current” system, Edison’s system was not “unreasonably dangerous.” Elgin Airport Inn, Inc., supra at 262. The court also found that there was nothing Commonwealth Edison could have done to reduce the danger that an abnormal current would pose to the Inn’s motors. Id. at 261. In the instant case, the jury could find the risk of fire from deteriorating cables to be quite unreasonably dangerous. The jury, upon deeming Glover’s testimony credible, could also reasonably find that Edison could have reduced the danger by updating and replacing the split fibre mains.
II.
Edison argues that the court’s failure to instruct the jury that “Edison could be held liable for the fire only if it knew or in the exercise of reasonable care should have known that the wires under Gates Street were defective” was unduly prejudicial. As explained previously, the jury could have rationally found that the various problems with faults and short circuits in the system should have put Edison on notice that the entire system was deteriorating. The jury could have relied on Glover’s testimony that Edison then had a duty to undertake a system-wide replacement. Finally, the jury could have reasonably concluded that Edison’s failure to replace the Gates Street cables, as well as all the other antiquated cables, proximately caused the fire which resulted in the plaintiffs’ injuries. Under this analysis, the requested instruction regarding Edison’s specific knowledge of the Gates Street cables was not warranted.
ORDER
For the foregoing reasons, the defendant Boston Edison Company’s Motion for a Judgment Notwithstanding the Verdict and, in the alternative, a new trial must be DENIED.

 There was no evidence of any problems with the split fibre main cable on Gates Street.

 Glover testified that “cable in conduit” is more resistant to damage from water and other components. While there was evidence that Edison had replaced split fibre main with cable in conduit, there was no evidence that this upgrade program was implemented out of safety concerns.